352 So.2d 643 (1977)
STATE of Louisiana
v.
Gilbert HENRY.
No. 59632.
Supreme Court of Louisiana.
November 14, 1977.
Rehearing Denied December 14, 1977.
*645 James E. Shields, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant, Gilbert Henry, was charged by bill of information with armed robbery, a violation of La.R.S. 14:64, and pled not guilty. He was tried by a twelve person jury which, at the conclusion of a five day trial, found him guilty as charged. The trial court thereafter sentenced defendant to serve 20 years in the custody of the Department of Corrections. On appeal he relies upon ten assignments of error, consolidated into four arguments, for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
By this assignment defendant argues that the trial court erred in denying his motion to suppress a confession which he alleges was not voluntarily given.
A lengthy hearing on the motion disclosed that the confession was obtained under the following circumstances. Convinced of his client's innocence, defendant's counsel persistently requested the District Attorney's office to administer a polygraph test to defendant. On the morning of May 21, 1975, the day scheduled for trial, the District Attorney's office yielded and offered defendant the following proposition: the trial date would be continued and a polygraph test conducted that day; if defendant passed the test, the charges against him would be dropped. If he failed the test he would enter a guilty plea. Defendant accepted the offer and signed a detailed Agreement and Stipulation form which provided, inter alia, that the polygraphist would have access to state and defense investigative files in formulating his questions; that he would have sole discretion in determining the conduct of the examination and the questions to be asked; that the defendant would answer all questions truthfully; and that the results of the polygraph test and any statements made by defendant during any phase of the examination would be admissible in evidence. Additionally, defendant signed a document certifying that he understood the provisions of the Agreement and Stipulation and voluntarily waived his right to remain silent and to have counsel present during the examination.
Prior to defendant's signing the above described forms, defense counsel and the assistant district attorney explained their terms and the consequences of the agreement at length, devoting approximately two and one-half hours to this task. Thereafter, the trial judge, who witnessed defendant's signature, also reviewed defendant's rights with him to insure that his waiver was voluntary. The attorney later testified that he would not have permitted defendant to enter the agreement had he not been confident that defendant understood his rights.
After defendant signed the agreement, he was taken to a room in the criminal court building to be tested by Sgt. Frank Ruiz, a polygraphist from the New Orleans Police Department. Ruiz testified that at the outset of the interview he advised defendant that he did not have to answer any questions and that he could discontinue the test at any time.
Ruiz explained that his standard testing procedure is to pose a set of 12 questions to *646 the subject which are reviewed before the actual test begins. The questions are then repeated and a reading taken on the subject's responses. After the first chart is taken, Ruiz customarily discusses the questions and responses with the subject to determine whether he has experienced any particular difficulty with them. The test is then readministered on the basis of the same 12 questions and a second reading taken.
Defendant's examination was commenced at approximately 12:30 p. m. At the conclusion of the first test, Ruiz informed defendant that he had failed and asked whether he might clear up any problems defendant may have had with the questions. In a 15-20 minute discussion, defendant related that although it had not been his idea to rob the Westside Cleaners, he had driven a friend to that location with knowledge of his intention to rob it and had picked him up around the corner after the robbery as agreed upon beforehand. After defendant had confessed, Ruiz considered it unnecessary to conduct the second test, and the examination was concluded at 1:45 p. m., one hour and 15 minutes after its inception.
Defendant testified at the hearing that after taking the first chart Ruiz had disconnected the testing apparatus, verbally abused him and attempted to extract a confession. Defendant stated further that he did not confess.
The thrust of defendant's argument on appeal is that the discussion which resulted in the confession was not part of the polygraph examination and was not contemplated by defendant or defense counsel at the time they executed the waiver forms. The argument is based upon defense counsel's testimony that he did not and would not have agreed to any post-test questioning, and upon defendant's assertion that the testing apparatus had been disconnected before the critical discussion began. The state contends that under the terms of the agreement Ruiz was authorized to determine how the examination was to be conducted and under the procedure he established, defendant's confession was given during a "phase" of the examination. As noted above, Ruiz claimed that before defendant confessed he, Ruiz, had intended to take a second reading of his responses, and thus he had not detached the testing wires from defendant's person until after the confession was given.
Before a confession or inculpatory statement may be introduced in evidence, the state has the burden of proving affirmatively and beyond a reasonable doubt that it was free and voluntary and not made under the influence of fear, duress, menaces, threats, inducements or promises. La.R.S. 15:451; La.C.Cr.P. art. 703(C); State v. Adams, 347 So.2d 195 (La.1977); State v. Glover, 343 So.2d 118 (La.1977); State v. Taylor, 336 So.2d 855 (La.1976); State v. Peters, 315 So.2d 678 (La.1975). Additionally, it must be shown that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Upon reviewing the testimony taken at the lengthy hearing on the motion to suppress and the exhibits, including the Agreement and Stipulation form signed by the defendant, his attorney, the assistant district attorney and witnessed by the Honorable Thomas Brahney, Judge Ad Hoc, we conclude that all of what transpired between defendant and Officer Ruiz, including the discussion during which defendant confessed, was free, knowing and voluntary. The record supports the trial court's conclusion that defendant confessed voluntarily.
Even if we were to conclude that the Agreement and Stipulation did not authorize a post-test interview and that it was a post-test interview during which defendant confessed (a conclusion not supported by our construction of the agreement and the event) we would still find that the state had established the voluntariness of defendant's statement. Defendant was given a thorough explanation of his rights prior to the polygraph examination and it is apparent *647 that he understood those rights. Although defendant agreed to waive his right to remain silent and his right to have counsel present during the interview, Ruiz testified that he advised defendant that the interview could be terminated at any time upon his request. Therefore, defendant was not compelled to submit to the "postexamination" interview, but could have reasserted his right to remain silent. His decision to confess, then, was a reaffirmation of his earlier waiver.
The voluntariness of a confession is a question of fact for the trial judge and his conclusions as to the credibility of the witnesses and the weight of the testimony will not be overturned on appeal unless they are unsupported by the evidence. State v. Adams, supra; State v. Ross, 343 So.2d 722 (La.1977); State v. Sims, 310 So.2d 587 (La.1975).
We note that here the state did not attempt to introduce the results of the polygraph examination at trial; what is at issue is the admissibility of statements made during the course of that examination. See State v. Weeks, 345 So.2d 26 (La.1977).
This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 9, 10, 12, 13 AND 14
By these assignments defendant complains of five allegedly improper comments[1] made by the trial judge during the course of trial. We have reviewed each of these complaints.[2] The remarks do not constitute reversible error. That complained of in assignment of error number nine, while it may have gone beyond what was necessary for the discipline of the court, was not reversibly prejudicial. That complained of in number ten was not so unduly harsh so as to discredit defense counsel in the eyes of the jury. That complained of in assignment of error number twelve was a permissible explanatory comment in assigning reasons for a court ruling. That complained of in number fourteen, was not objected to at trial. And that complained of in number thirteen, while an impermissible comment by the trial judge which we do not condone herein, was not sufficiently prejudicial to require reversal of defendant's conviction.
These assignments are not meritorious.

ASSIGNMENTS OF ERROR NOS. 3 AND 5
On the first day of trial, defendant's former attorney[3] testified on the issue of the voluntariness of defendant's confession out of the presence of the jury. Due to a congested court schedule, the appearance apparently caused the witness some inconvenience and in order to obviate the need for his returning, trial defense counsel and *648 the prosecutor agreed that his testimony on the predicate would later be submitted to the jury. To that end, the testimony was promptly transcribed by the court reporter. However, on the third day of trial, this same witness was presented in person on behalf of the defendant. On cross-examination of this witness, but not for the purpose of impeachment, the state proposed to read the entire transcript of the witness' prior testimony to the jury. When the trial court sanctioned this procedure, in light of defense counsel's earlier stipulation that the transcribed testimony on the predicate would later be submitted to the jury, defense counsel objected without expressing a basis for the objection. In brief, defense counsel argues that the transcript should not have been admitted because the testimony, when given, was not intended for the jury's hearing and alternatively, that certain prejudicial comments in the record should have been deleted prior to its disclosure to the jury.
However unorthodox this method of proceeding may seem (in effect the witness testified for the defense in chief, then the transcript of his predicate testimony was read to the jury, and thereafter the witness was questioned anew by the state's attorney) there was no error in the trial court's ruling. Defense counsel had earlier stipulated to the use of the transcript and his objection posed just prior to introduction of the transcribed testimony was unattended by express reasons. Furthermore, his complaint that prejudicial comments by the trial judge should have been excised from the transcript should have been made before the transcript was read to the jury.
These assignments are without merit.

ASSIGNMENT OF ERROR NO. 16
By this assignment defendant complains that the trial judge erred in instructing the jury on particular decisions of this Court holding that (1) illiteracy alone does not preclude a confession from being voluntary; (2) moderate retardation or a low intelligence quotient does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession and; (3) the use of a lie detector test as a means of interrogation does not render a confession involuntary.
In light of the reasons given hereinafter for finding the assignment nonmeritorious, we are not called upon to determine whether the charges complained of are erroneous. We deem it advisable to note, however, that in the context in which given the court's charges are at the least questionable. It was the jury's function to weigh the voluntariness of defendant's confession and its prerogative to give appropriate significance to the (judge determined) admissible confession. While it is appropriate to advise the jury that such factors as illiteracy, retardation or low I.Q. may be considered on the issue of voluntariness, and, perhaps, that a confession procured during the course of administering a lie detector test is not on that account to be barred from consideration, it is entirely another matter for the judge to instruct the jury that the Louisiana Supreme Court in various cases has determined that each such factor does not render a confession involuntary. Such a charge is arguably an invasion of the jury function, and/or an inferential comment on the evidence by the trial judge.
The merit of the charges, however, is not before us. Defendant did not request a written copy of the trial court's proposed charge to the jury as was his right under Article 801 of the Code of Criminal Procedure. Had he done so, defendant could have expressed his objection to the charge prior to the time that is was given to the jury. State v. Beard, 312 So.2d 278 (La.1975). Furthermore, defendant did not object when the charge was given, either by interruption of the judge during the charge or at the conclusion of his giving it. With an objection at either stage, the court would have been afforded the opportunity to reinstruct the jury and possibly cure the alleged defect in the charge.
In fact it was not until the jury returned to the courtroom for the opportunity to *649 view two exhibits, some three and one-half hours after it had commenced its deliberation, that the defendant finally lodged his complaint. At that point defense counsel noted that he would like to record his objection to the court's charge "in reading into the record the cases you read." The district attorney objected to this colloquy in the presence of the jury and asserted that defense counsel could argue that outside the presence of the jury. The court allowed the objection to be noted. Counsel did not then, nor upon the jury's being retired, further explain the character of his objection, nor did he request that the court give supplemental jury charges of a corrective nature. Had counsel requested supplemental corrective charges and further explained the nature of his objection, the trial judge at least in that instance would have had an opportunity to properly weigh the objection and still might have opted to give the corrective jury charges.
This assignment is not meritorious.
For the foregoing reasons the conviction and sentence of the defendant Gilbert Henry is affirmed.
AFFIRMED
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent, being of the opinion this mental retardate could not knowingly and intelligently confess, and that the trial judge improperly commented on the evidence.
NOTES
[1] La.C.Cr.P. art. 772 provides:

The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
[2] In assignment number nine defendant complains of the trial judge's remarks that a witness' response to a question posed by defense counsel would be unfavorable.

Assignment number ten is addressed to the trial judge's directing defense counsel to obtain personally certain information relative to the health of a juror, since any other method of obtaining such information might make the information suspect.
Defendant complains in assignment number twelve of the trial judge's comment in response to a defense objection to relevancy that the testimony in question was "most relevant".
The remark complained of in assignment number thirteen consisted of a question posed by the trial judge to a medical witness concerning the defendant's mental condition and his corresponding ability to comprehend the waiver form.
The final comment complained of by the defendant, assignment number fourteen, was a statement by the trial judge that he was able to foresee that a particular witness would be uncooperative.
[3] Defendant Gilbert was originally represented by attorney Lyall G. Shiell. Shortly after the defendant gave the confession discussed in the first assignment of error Mr. Shiell, with the court's approval, withdrew as defendant's counsel. Thereafter, defendant's present counsel, James E. Shields, became attorney of record.