380 So.2d 1 (1979)
STATE of Louisiana
v.
Eddie James SONNIER.
No. 64125.
Supreme Court of Louisiana.
September 4, 1979.
Concurring Opinion March 12, 1980.
*2 William R. Collins, New Iberia, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Dracos D. Burke, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
During the evening of November 14, 1977 the defendant, Eddie James Sonnier, and his older brother, Elmo Patrick Sonnier, left St. Martinville in Patrick's car for an evening of rabbit hunting. After spending a considerable time riding through the countryside, the Sonnier brothers came across an automobile parked in a remote spot of St. Martin Parish at about 1:00 a. m. Patrick Sonnier suggested to defendant that they have some "fun," then approached the car and showed the young couple inside, David LeBlanc and Loretta Borque, a badge which he had obtained when he worked as a security guard. Posing as a police officer, Patrick told David and Loretta that they were trespassing, and that he would have to take them to the landowner to see if he wished to press charges against them. Patrick then ordered them from the automobile, confiscated their licenses and handcuffed them together. When his car would not start, Patrick told Eddie to drive LeBlanc's car. Eddie refused, and Patrick took the wheel and began a long drive through remote areas familiar to him from his experience as a local cab driver, eventually stopping in a deserted oil field in Iberia Parish. The young couple was ordered from the car, and Patrick took Loretta into the woods, leaving David handcuffed to a tree guarded by Eddie.
After some time had passed, Eddie followed his brother into the forest and discovered that he had raped Miss Borque. The defendant spoke to the young woman, and she submitted to intercourse with him when defendant promised the couple's safe release. After the second rape, Borque and LeBlanc were brought back toward the car. At that point, however, Patrick told his brother that they could not release David and Loretta because he (Patrick) would be returned to Angola if the couple spoke to the authorities. David and Loretta were then forced to lie down prone on the ground, ostensibly to have their picture taken. Patrick Sonnier then shot each three times in the head with a .22 caliber rifle while Eddie held a flashlight for Patrick.[1]
The brothers then drove LeBlanc's car to the scene of the abduction to pick up Patrick's automobile. Since the car had a flat tire, they used a jack from the LeBlanc vehicle to change tires and kept the jack, which was later discovered and seized by the police. The brothers then destroyed the victims' driver's licenses and apparently took some money which had been in the victims' possession before their abduction. The next day they buried the rifles in another remote area.
The defendant was arrested in early December, 1977. He confessed in some detail to the crime (although he at first failed to mention his raping Miss Borque) and led the authorities to the site where the rifles were buried. He was indicted on December *3 16, 1977 on two counts of first degree murder (R.S. 14:30). At trial the defendant was found guilty as charged on both counts. After the sentencing phase of the trial, the jury recommended that Sonnier be sentenced to death on both counts; the death penalty was imposed on October 18, 1978. On appeal the defendant relies on five assignments of error for reversal of his conviction and sentence.

Assignment of Error No. 1
In this assignment of error the defense contends that the trial judge was in error to permit Lieutenant Denison to testify concerning an inculpatory statement made by the defendant. The defense argues that such testimony was inadmissible on three grounds: the State's failure, pursuant to a discovery motion and as required by C.Cr.P. 768, to provide accurate information concerning the statement; the statement's nature as neither free nor voluntary; and the statement's status as a fruit of a polygraph examination.
The record reveals that Lieutenant Denison of the Louisiana State Police was to administer a polygraph test to the defendant on December 5, 1977 in order to evaluate the truth of defendant's earlier statements. As a preliminary step, Denison asked Sonnier if he knew why he was there. The defendant acknowledged that the test concerned the deaths of LeBlanc and Borque, and then went on to say that he had remained with David LeBlanc while his brother raped Loretta Borque, and that he later took his brother's place and had intercourse with her. Sonnier told Denison that his brother at this time expressed his unwillingness to return to the penitentiary as a result of these acts. He also stated that the victims were then told to lie on the ground to have their picture taken and were shot by his brother while he held a flashlight for him. Denison then terminated the interview and sent for other police officers.
C.Cr.P. 768 requires the prosecution to give the defense pretrial written notice of its intention to introduce a confession or inculpatory statement. Article 716, governing aspects of discovery, provides in pertinent part:
"B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer."
Although the defense contends that it received inadequate notice of this statement, the record indicates that the defense was informed of the statement's existence, the date and to whom it was made, and its contents. Therefore, it is clear that the prosecution was not remiss in giving the defense adequate notice of the statement.
The defense's second contention, that the statement was not free and voluntary, is equally unpersuasive. Although the prosecution shoulders the heavy burden of establishing beyond a reasonable doubt that an inculpatory statement was made freely and voluntarily, R.S. 15:451; State v. Hebert, 356 So.2d 991 (La.1978), the prosecution has met this burden through the testimony of Lieutenant Denison that Sonnier spoke willingly and appeared alert and fully aware of his actions. The defense's allegations that Sonnier was fatigued and was not fully aware of what he was saying are not supported by the record.
The State must also prove that the defendant was advised of his constitutional rights if the confession or inculpatory statement was obtained during a custodial interrogation, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State *4 v. Clark, 340 So.2d 208 (La. 1976), cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977). The defense argues that Denison's failure to read the defendant his Miranda rights[2] prevents the State from introducing testimony concerning the statement at trial. However, it is clear from the record that, although the defendant was in custody, his statement was not a result of an interrogation; it was volunteered by Sonnier when the officer asked Sonnier if he knew why he was there. Denison (and Sonnier) knew that Sonnier had just given an inculpatory statement (which had been preceded by a full Miranda warning) and another statement, which was not introduced. Instead of a responsive answer, defendant volunteered the inculpatory statement. Under these circumstances, the failure of Denison to begin the interview with the Miranda warning did not outlaw the use of the statement.
The defense also urges that the statement was "part of the process" of the polygraph examination, and that it should be considered a result of the test and therefore be inadmissible. See State v. Catanese, 368 So.2d 975 (La.1979). However, the record belies any argument that the statement "resulted" from the examination because it was made before the test had begun. State v. Catanese, supra, and other related cases have expressed concern over the admissibility of polygraph test results, but nothing in that line of jurisprudence suggests that a statement like the instant one should be inadmissible.
This assignment of error is without merit.

Assignments of Error Nos. 2 and 5
By these assignments of error the defense argues that the verdict was contrary to the evidence introduced at trial, and, therefore, indicates that several jurors reneged on their promises made on voir dire that they would not impose the death penalty if the defendant had not killed anyone.
Review by this court is limited to a determination of the existence of some evidence of each essential element of the crime, State v. Banks, 362 So.2d 540 (La. 1978); State v. Williams, 362 So.2d 530 (La. 1978). A conviction will be set aside on appeal if there is no evidence of an essential element. State v. Madison, 345 So.2d 485 (La.1977).[3] In the instant case, there is obviously sufficient evidence by which a reasonable jury could convict Sonnier on first degree murder charges. The defendant was present during the entire chain of events culminating in the shooting. He admitted the rape of Loretta Borque, and held the flashlight while his brother shot the young couple. Therefore, the jury's verdict cannot be assailed as contrary to the evidence presented at trial.
The defense also argues that several veniremen gave dishonest answers when they indicated on voir dire that they would not impose the death penalty unless the believed that Eddie Sonnier had killed someone. The defense contends that these promises were obviously not kept since the jury recommended the death penalty despite the complete lack of evidence that the defendant had pulled the trigger. However, this argument is unpersuasive for two reasons. First, it is clear that there was indeed some evidence of each essential element of first degree murder since Sonnier could properly be considered a principal to the offense, R.S. 14:24, even if he did not perform the actual shooting. Second, it is questionable whether the statements made by the prospective jurors in the present case come within the prohibition established by C.Cr.P. 775(6). The article in question appears to contemplate factual misstatements *5 such as those encountered in State v. Forbes, 348 So.2d 983 (La.1977), where the venireman failed to reveal his relationship to certain law enforcement officers. In the instant case, the allegedly dishonest responses concerned the jurors' subjective appreciation of criminal responsibility, and cannot be considered "False statements of a juror on voir dire." C.Cr.P. 775(6).
These assignments lack merit.

Assignment of Error No. 3
In this assignment of error, the defense contends that the trial court erred in sentencing the defendant to death because the death penalty constitutes a violation of the constitutional prohibition against cruel and unusual punishment.
In Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the United States Supreme Court held that the death penalty was not per se unconstitutional. Decisions of this court have also indicated that the death penalty does not invariably violate constitutional guarantees. See State v. Myles (La.1979) (No. 63567); State v. English, 367 So.2d 815 (La.1979); State v. Payton, 361 So.2d 866 (La.1978).

This assignment is without merit.

Assignment of Error No. 4
By this assignment of error the defense alleges that the trial judge was in error to sentence the defendant to death since the sentence is clearly excessive.
The record indicates that the defendant was tried in compliance with Articles 905.1 through 905.9 of the Code of Criminal Procedure which provide for bifurcated trials in capital cases. At the conclusion of the sentencing hearing, the jury deliberated and returned with a unanimous recommendation that the defendant be sentenced to death. This sentence was later imposed by the trial judge.
This court reviews every death sentence to determine if it is excessive. La.Const., art. 1, § 20; C.Cr.P. 905.9. In reaching a decision on this issue, the court considers: whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factors; whether the evidence supports the jury's finding of a statutory aggravating circumstance; and whether the death penalty is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Rules of the Supreme Court, Rule 28, § 1.
A. Aggravating Circumstances
In arguing for the death penalty, the State relied upon six aggravating circumstances; that the crime occurred during the perpetration of an aggravated kidnapping, an aggravated burglary, an armed robbery and an aggravated rape; that the crime occasioned a risk of death or great bodily harm to more than one person; and that the crime was committed in an especially heinous, atrocious, or cruel manner. The jury indicated that it found all of these aggravating circumstances to be present. We first must consider the aggravating circumstances which concern the commission of other crimes connected with the murder.
R.S. 14:60 defines aggravated burglary as "[t]he unauthorized entering of [any] movable where a person is present, with the intent to commit a felony or any theft therein, if the offender is armed with a dangerous weapon ..." Armed robbery is defined as the "theft of anything of value from the person of another which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." R.S. 14:64. Evidence was introduced at trial that Patrick Sonnier was armed when he entered the car in which LeBlanc and Borque were parked with the intention of kidnapping them and that he forced them to surrender their wallets and driver's licenses; their money was also apparently taken. Under the theory of principals embodied in R.S. 14:24, these actions are chargeable to the defendant, and therefore the jury could find the existence of armed robbery and aggravated burglary as aggravating circumstances.
There is also sufficient evidence to support the jury's finding that the murder was committed during the perpetration of an aggravated rape. Miss Borque was first *6 forced to have sexual relations with Patrick Sonnier after he abducted her at gunpoint from her boyfriend's car. There is every indication that any resistance on her part would have been met with threats of great and imminent harm which Patrick Sonnier could easily have accomplished, see R.S. 14:42(2). Even if Eddie Sonnier were not considered a principal to this crime, he admitted to Lieutenant Denison that he had intercourse with Loretta in exchange for a promise of safe release, evidence that Miss Borque considered her life in imminent jeopardy if she did not submit to her captor's desires.
The bargain struck between Sonnier and Borque also lends support to the jury's finding of aggravated kidnapping. Aggravated kidnapping is the forcible seizing and carrying away of any person with the intent to force the victim, or some other person, to give up anything of apparent value, or to grant any advantage to secure the person's release. R.S. 14:44. This court has held that sexual gratification constitutes something of apparent value for purposes of this statute, State v. Dupre, 369 So.2d 1303 (La. 1979). For this reason, it is clear that an aggravated kidnapping occurred.
A further consideration is whether the jury was correct to find that the instant murders involved the risk of death or great bodily harm to more than one person. Recently, in State v. Sonnier, So.2d 1336 (La.1979), we held that the aggravating circumstance was present when two or more people are killed on one occasion for the purpose of eliminating surviving witnesses to the first murder. See also Proffitt v. Florida, 428 U.S. 242, 256, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913, 925 (1976); Alvord v. State, 322 So.2d 533, 540 (Fla. 1975). Therefore a basis exists in the evidence adduced at trial for finding this aggravating circumstance.
The jury also concluded that the offense was committed in an especially atrocious, heinous or cruel manner. The evidence introduced at trial provides a basis for this determination. As this court noted in State v. English, supra, this concept connotes "some idea of torture or the pitiless infliction of unnecessary pain on the victim." 367 So.2d at 823. Moreover, the torture or unnecessary pain may be psychological as well as physical. State v. Sonnier, supra. In the instant case, the victims were abducted at gunpoint, handcuffed, and carried through the night to an unknown destination. David LeBlanc was handcuffed to a tree while first Patrick and then Eddie had intercourse with Loretta. Before being shot, the couple was forced to lie face down on the pretext of having their picture taken. The length of their ordeal and the indifference to their suffering which the record demonstrates are convincing that the crime could be characterized as cruel within the meaning assigned to the term by Article 905.4.
In light of these considerations, the jury's finding that six aggravating circumstances existed was not incorrect.
B. Disproportionality to other sentences, considering the defendant and the crime
The defendant, Eddie James Sonnier, is a white male who was born on January 6, 1957, the son of Elmo Joseph and Gladys Sonnier. When he was a small child his parents separated and he spent several years living first with one parent and then with the other. His father died when Eddie was ten years old. Eddie told the sentence investigator that he had enjoyed living with both his parents and that he had passed a happy childhood. During either the sixth or seventh grade he quit school to work as a field hand in the cane fields.
Sonnier's only previous brush with the law occurred under unusual circumstances. He was living with a fifteen year old girl at her house when she became pregnant. Eddie wanted to marry the girl, but her mother refused to sign the necessary papers. The girl indicated that she was willing to marry Eddie, but only to be free from her parents; she did not intend to live with the defendant. Eddie took a gun and went to her house to force an entry. The occupants of the house called the sheriff's office, and *7 when deputies arrived, they found Sonnier sitting outside weeping and shaking. He was charged with aggravated assault, but the charges were later reduced to simple assault and Sonnier was fined, given a suspended sentence, and placed on unsupervised probation for two years. After the incident, Sonnier wrote a series of threatening letters to himself. He reported the correspondence to the sheriff, but it was soon discovered that he was the author of the letters.
For almost three months before he was arrested, Eddie lived with his older brother Patrick. He cannot remember ever seeing in Patrick's statement any reference to his (Eddie's) having fired the first shot. Eddie expressed his concern over Loretta Borque's fate, stating that he felt that he had broken his word to her since he had promised her safe release. He also stated that he had been unable to sleep or eat after the crime and that he had been on the verge of turning himself in on several occasions but had lacked the nerve to do so.
Four other first degree murder prosecutions have taken place in the Sixteenth Judicial District since January 1, 1976. The first involved the prosecution of James Lee Bullock, a small man who beat a much larger oil field worker with a billy club with such force that the club broke in three places. Bullock then took the victim's boots, wallet and other belongings, and when the victim attempted to flee, he gouged him with a broken piece of the billy club. The defendant was found guilty of second degree murder and was sentenced to life imprisonment.
The prosecution of Frank Bennett arose out of a domestic quarrel in which Bennett was forced from his house and was compelled to spend the night in a washateria. The next day the defendant purchased a handgun, went to the house, fired the gun in the air, and began to pistol whip the victim. When she ran from the house, Bennett shot her, killing her instantly. Bennett told the arresting officers that he had checked the body to be certain that she was dead and that he would have fired again if she had been alive. Bennett was found guilty of first degree murder, and the jury recommended life imprisonment.
Marcel Knott was tried in St. Mary Parish after a change of venue from St. Martin Parish was ordered. The case grew out of a feud between two families, the Knotts and the Hayes, who had been close friends at one time but who had been divided by an inter-family dispute. One evening Knott and his wife were in Henderson where they backed into a parked car. Officers Hayes and Courville investigated the accident and were subjected to such verbal abuse by Mrs. Knott that Officer Hayes forced her into the patrol car. Knott then began shooting at the officers, killing Courville but only wounding Hayes. He was convicted of second degree murder and was sentenced to life imprisonment.
The fourth prosecution for first degree murder was that of Elmo Patrick Sonnier, the defendant's brother, for the instant homicides. Patrick Sonnier was convicted of first degree murder and was sentenced to death. Both conviction and sentence were recently upheld by this court. State v. Sonnier, supra.
C. Passion, Prejudice or Other Arbitrary Factors
A final consideration in this court's review of a death sentence is to determine whether the jury's recommendation of death was influenced by passion, prejudice or other arbitrary factors.
Rule 28 of this court establishes a three step review for evaluating the appropriateness of a death sentence. The mere existence of a three step process indicates that a death sentence may be excessive even if sufficient ground exists for each aggravating circumstance found by the jury. State v. Sonnier, supra, 379 So.2d at 1364 (Dennis, J. concurring and dissenting). Certainly an inference of arbitrariness would arise if a jury's recommendation of death was inconsistent with sentences imposed in similar cases from the same jurisdiction. Rule 28, § 1(c). Another indication of arbitrariness would be a jury's recommendation of *8 death in disregard of numerous and persuasive mitigating circumstances which clearly outweigh any aggravating circumstances found to be present. In the instant case, our review demonstrates that the sentence is excessive under either standard.
It is first noteworthy that of the four other first degree murder prosecutions in the Sixteenth Judicial District since 1976, three of the defendants received life imprisonment. Moreover, in all of these cases there was no question that the defendant had intended to kill the victim. Bullock beat Joe Mincey with an eighteen inch billy club until it broke into three pieces and then gouged him with a broken piece of the club as he attempted to flee. The jury saved Bullock from the executioner by branding this intentional killing a second degree murder. Frank Bennett beat his victim with his handgun and chased her outside to shoot her. He told the police that he touched the corpse and would have shot again if there had been signs of life. The jury recommended life imprisonment for him. Marcel Knott shot two police officers in the course of duty, wounding one and killing the other instantly, but the jury nevertheless did not impose the death penalty. On the other hand, in the instant case there is a substantial question whether the defendant intended the deaths to occur. Bullock, Bennett and Knott all acted alone to dispatch their victims; Eddie Sonnier did not fire the fatal shots, and acted as his brother's instrumentality in a scheme wholly concocted by Patrick Sonnier. The evidence was overwhelming that Bullock, Bennett and Knott desired their victims' deaths, equivocal at best in the case of Eddie Sonnier.
A review of these other prosecutions shows that the jury's recommendation of the death penalty in the instant case does not conform with sentences meted out in other first degree murder cases. The intention to kill was manifest in the Bullock, Bennett and Knott prosecutions, but is elusive in the present case. Imposition of the death penalty in this case but not in the other cases suggests that the penalty is being applied in the "freakish" and "wanton." manner reprobated by the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Therefore, under this test, the penalty is excessive within the meaning of Article 905.9 of the Code of Criminal Procedure.
A second indication of arbitrariness arises from the jury's recommendation of death in apparent disregard of the substantial mitigating circumstances presented by the defendant's case. The record presents Eddie Sonnier as a young man of excitable disposition with little education. Unlike his brother, who has an extensive criminal record, Eddie has been arrested only once and has never been sentenced to jail.
It is also clear from the record that Eddie Sonnier was acting under his brother's influence when he participated in the crimes committed on November 14, 1977. The evidence introduced at trial indicates that it was Patrick Sonnier who initiated the nocturnal excursion, who suggested harassing the lovers, and who approached the victims' car to "arrest" them for trespassing. More importantly, it was Patrick who decided that David and Loretta were to die so that he could avoid a return to the penitentiary. Eddie's participation in the murder by holding the flashlight (and by firing an unsuccessful first shot, if such was the case) came at his brother's insistence after Patrick had already decided to kill the young couple. Whatever resistance Eddie, whom the prosecution characterized as a mental and physical weakling, might have offered against his armed brother at this point would surely have been ineffective.
Another substantial mitigating factor is the small role played by Eddie Sonnier in the murders. The defendant's participation in the crime was minor and came at his brother's insistence. The importance which may attach to a defendant's minor participation was specifically recognized by the Supreme Court in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), in which three members of the court indicated their belief that imposition of the death *9 penalty under a theory of vicarious liability may violate Eighth Amendment limits on disproportionality. 438 U.S. 586, 613, 619, 621, 98 S.Ct. 2954, 2969, 2972, 2981, 57 L.Ed.2d 973, 995, 998, 1000 (Blackmun and Marshall, JJ., concurring, White, J. concurring in part and dissenting in part). Not only is there evidence that the defendant participated only at his brother's insistence, but there is also evidence that he attempted to withdraw from the enterprise; when the young couple was first abducted Eddie refused to drive LeBlanc's car as requested by Patrick. Patrick simply elected to drive the car himself, and Eddie only decided to accompany him when he could not start Patrick's car.
In contrast, although several of the statutory aggravating circumstances were found by the jury, the record is also clear that the defendant's role in these occurrences, except for the aggravated rape, was subsidiary. The prosecution argued that Eddie must have played a substantial role in the evening's events since Patrick could not have overcome and killed the young couple without help. However, this argument overlooks the fact that Patrick Sonnier evidently impersonated a police officer and "arrested" the young couple for trespassing after showing them a fake badge. From the time they left their automobile, Loretta and David were handcuffed together. There is no suggestion that Borque and LeBlanc ever struggled with their captors; the law-abiding young people accepted Patrick's apparent authority to arrest them until the situation was too far advanced for any practical resistance. In short, the weight of the evidence indicates that the defendant played only a subsidiary role in most of the aggravating circumstances found by the jury. Therefore, considering the large number of persuasive mitigating factors and the relatively minor role which the defendant played in the creation of the aggravating circumstances, the death penalty was excessive.
For the reasons assigned, the conviction is affirmed, but the sentence is reversed and the case is remanded to the district court for imposition of a sentence of life imprisonment without benefit of parole, probation or suspension of sentence.
DENNIS and BLANCHE, JJ., concur and assign reasons.
DENNIS, Justice, concurring.
I join in the majority opinion except for its reasoning and conclusions as to two of the aggravating circumstances. In my opinion the majority misinterprets the statutory meaning of (1) a homicide which causes risk of death or great harm to someone other than its victim, and (2) an especially heinous, atrocious or cruel murder. See my separate opinion in State v. Sonnier, 379 So.2d 1336 (La.1979). My bretheren's overly broad reading of these aggravating circumstances will encourage juries to decide the life or death issue arbitrarily or capriciously in all cases in which the victim is not alone at the time of the killing. This type of statutory construction, when human life is in the balance, jeopardizes the legislature's good faith effort to enact a constitutionally fair and impartial capital punishment system. See Gregg v. Georgia, 428 U.S. 153, 201-02, 96 S.Ct. 2909, 2938-39, 49 L.Ed.2d 859, 890-91 (1976).
BLANCHE, Justice (concurring).
I concur.
Even though Eddie James Sonnier was, by all the evidence, a principal in the killing of these young people, it was Elmo Patrick Sonnier who decided their fate and acted as their executioner. The murders took place in total darkness and it was necessary for Eddie James Sonnier to hold the flashlight while his brother pumped three shots each into the back of each victim's head.
This wanton and pitiless decision was based upon Elmo Patrick's desire to avoid detection, and eventually, another trip to Angola. Eddie James Sonnier had no prior criminal record of any significance, and a fair inference from the record depicts him *10 as a functional illiterate who was under the domination and control of his older and brutal brother.
I believe that the death penalty is applicable, and should be applied to principals, and do not, by this concurrence, excuse Eddie Sonnier from its reach simply because he did not pull the trigger. He escapes because of the special circumstances of his involvement in these crimes, and because of the influence of his older brother. After review of both records, it is my opinion that except for Elmo Patrick Sonnier's decision to kill these two young people, there would have been no murders.
NOTES
[1] At trial, when asked by the defense who had killed the young couple, Captain Horace Comeaux surprised defense counsel by his statement that Eddie Sonnier had fired the first shot but had missed and that Patrick had then taken the rifle from him. The source of the statement is not revealed by the record.
[2] Denison stated that the Miranda warnings were to be given later in the preparatory steps before commencement of the examination.
[3] Recently the Supreme Court held in Jackson v. Virginia, U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that a federal court reviewing a state conviction in a habeas corpus proceeding must consider whether there was sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt, and that the lesser standard of "some evidence" was therefore impermissible. Even under this more stringent standard, however, there is sufficient evidence to affirm the defendant's conviction.