414 So.2d 316 (1982)
STATE of Louisiana
v.
Jesse M. TREVATHAN.
No. 82-K-0157.
Supreme Court of Louisiana.
May 17, 1982.
*317 Keith M. Whipple, & Jules D. Boquet, of Whipple & Boquet, Houma, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James L. Alcock, Asst. Dist. Atty., for plaintiff-respondent.
MARCUS, Justice.
Jesse Manuel Trevathan was indicted by the grand jury for the second degree murder of Rick Brian Whitener on July 22, 1981, in violation of La.R.S. 14:30.1. Defendant filed a motion to suppress, inter alia, certain statements made by him at the site where the body of the victim was found. After a hearing, the motion was denied. We granted defendant's application under our supervisory jurisdiction to review the correctness of that ruling.[1]
Defendant contends that the inculpatory statements were obtained from him by the police in violation of his sixth amendment right to assistance of counsel; therefore, they should be suppressed.
Evidence adduced at the suppression hearing reveals that defendant, age seventeen,[2] was arrested, pursuant to an arrest warrant, at about 2:00 a. m. on July 29, 1981, at his home where he resided with his parents. Defendant was taken to the sheriff's office at the courthouse where he was booked and taken to Capt. George Perkins' *318 office for interrogation by Capt. Perkins and Lt. Mike Elstner. After being advised of his Miranda rights, he was questioned concerning the alleged crime; however, when defendant informed them that he did not know what they were talking about, the officers left to talk with another young man who had been arrested in the matter. Defendant remained in Capt. Perkins' office.
At about 2:45 a. m., Gerald F. Lofaso, an attorney, arrived at the sheriff's office. He indicated that he had been retained to represent defendant. At about the same time, defendant's father arrived. Mr. Lofaso and defendant's father met privately with defendant in Capt. Perkins' office. On about three occasions during this meeting, Mr. Lofaso came out of the office to relate information to the officers regarding the location of the victim's body. This information led to search efforts which commenced a few hours later. Prior to leaving the courthouse (at about 4:45 a. m.), Mr. Lofaso told Officers Perkins and Elstner that defendant was not to be interrogated further without the presence of an attorney or taken to the scene where the body was located.
Defendant was then taken to the jail area of the courthouse where he remained until about 8:00 a. m., at which time he was removed from his cell and brought to meet with Sheriff Ronnie J. Duplantis who had just arrived at the office. Sheriff Duplantis testified that he sought defendant's cooperation in locating the victim's body. He further stated that he was not informed by anyone, including defendant, that defendant was represented by an attorney, much less that the attorney had left instructions that his client was not to be further interrogated or taken to the scene where the body was located. After agreeing to cooperate, Sheriff Duplantis advised defendant of his Miranda rights and took him to the state police headquarters where he (Duplantis) engaged a helicopter which took them, under defendant's direction, to the site of the search which was already under way.
Lt. Elstner testified that when the helicopter landed at the search site, he and others had just recovered three .22 caliber empty casings and were awaiting a flat boat in order to check the bayou. He further stated that, while at the search site, he told Sheriff Duplantis that defendant was represented by Mr. Lofaso who had left instructions not to interrogate him.
Detective Jerry Denton, who had earlier assisted in defendant's arrest, testified that he was standing near the boat when defendant, with whom he had developed a rapport in a previous case, disembarked from the helicopter. Defendant requested to talk with him. After advising defendant of his Miranda rights, defendant and Detective Denton began to talk regarding defendant's involvement in the case. Detective Denton jotted down notes as they spoke. Detective Denton admitted that his report indicated that he had told defendant that the giving of a statement might help him. He further admitted that he was present when Mr. Lofaso told Officers Perkins and Elstner that defendant was not to be interrogated. Defendant remained at the search site for about one-half hour before being transported back to jail.
The sixth amendment, applicable to the states through the fourteenth amendment, guarantees an accused the right to the assistance of counsel. When counsel has been retained to represent a prisoner, the government authorities cannot deny the lawyer reasonable access to his client, nor may they ignore his request that he be allowed to confer with his client prior to, if not during, interrogation. State v. Matthews, 408 So.2d 1274 (La.1982); State v. Jackson, 303 So.2d 734 (La.1974), citing Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). A defendant's right to the effective assistance of counsel cannot be prejudiced by the state's failure to honor its agreement not to question the accused about the crime unless his attorney is present. State v. Weedon, 342 So.2d 642 (La.1977). Incriminatory statements taken in violation of the right to assistance of counsel, absent a valid waiver, are inadmissible. *319 State v. West, 408 So.2d 1114 (La. 1982); State v. Weedon, supra; State v. Jackson, supra. The question of waiver requires application of constitutional principles to the facts as found. It is incumbent upon the state to prove an intentional relinquishment or abandonment of a known right or privilege. The courts indulge in every reasonable presumption against waiver. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).
In the instant case, it is uncontroverted that defendant was represented by retained counsel who had instructed the police not to interrogate defendant without the presence of an attorney or take him to the scene where the victim's body was located. Despite these instructions, three hours later, Sheriff Duplantis, after gaining defendant's cooperation, took him to the site where the body was located, at which time defendant made incriminatory statements to Detective Denton. Counsel's instructions had been completely ignored. We do not consider Sheriff Duplantis' claimed ignorance of the admonitions by Mr. Lofaso to Officers Perkins and Elstner to be of any moment. Regardless of whether the sheriff was in good faith, a defendant is entitled to deal with the police as a single entity. State v. West, supra; State v. Weedon, supra. Under the circumstances, we consider that defendant's constitutional right to assistance of counsel was violated which resulted in the incriminatory statements made by him to Detective Denton.
Moreover, we do not consider that the state met its burden of showing that defendant intentionally relinquished or abandoned his right to counsel. Defendant, when initially interrogated by Officers Perkins and Elstner, denied any knowledge of the crime. There is no evidence in the record that defendant, barely seventeen years old, appreciated the incriminatory nature of his cooperation with the police or the implications that would flow therefrom. A reiteration of his Miranda rights prior to making statements to Detective Denton was not sufficient to constitute a waiver of counsel under the circumstances. Defendant had been arrested at his home and taken to jail at 2 o'clock that morning. Thereafter followed a series of events including interrogation by the police, a meeting with his attorney and father, a few hours in a jail cell, and a confrontation with the sheriff which culminated in a trip by helicopter with the sheriff to the scene of the search for the victim's body. While under the stress of these circumstances, defendant encountered Detective Denton, with whom he had previously developed a rapport and on being told by Denton that a statement might help his case, defendant confided in him. Under the facts of this case, we are unable to say that defendant made a valid waiver of his right to assistance of counsel. Hence, the inculpatory statements made by him to Detective Denton should have been suppressed.[3] The trial judge erred in ruling otherwise. We must reverse.

DECREE
For the reasons assigned, the ruling of the trial judge denying defendant's motion to suppress the inculpatory statements made by him to Detective Denton is reversed and set aside. The case is remanded to the district court for further proceedings.
NOTES
[1] 410 So.2d 250 (La.1982)
[2] Defendant's birthday was on July 23, 1964; therefore, he was sixteen on the day of the alleged crime (July 22, 1981) and had been seventeen for six days at the time of his arrest (July 29, 1981).
[3] While defendant's argument in his brief to this court was limited to the suppression of the inculpatory statements, in his writ application, he also alleged that the trial judge erred in failing to suppress "physical evidence, namely the victim's body and disclosure of the circumstances under which the body was recovered" on the basis that their discovery was a product of the violation of his constitutional rights. We do not agree as this evidence was discovered through an independent source. Mr. Lofaso, by his own admission, gave the officers the information they needed in order to locate the body. By the time Sheriff Duplantis arrived at the search site with defendant, search efforts were well under waythree empty casings had already been recovered and the arrival of the boat to search the bayou was imminent. Hence, the trial judge did not err in denying defendant's motion to suppress this evidence.