443 So.2d 531 (1983)
STATE of Louisiana
v.
Zane Lanier GREEN.
No. 82-KA-1914.
Supreme Court of Louisiana.
November 28, 1983.
*533 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, John Sinquefield, Asst. Dist. Attys., for plaintiff-appellee.
David Price, Baton Rouge, M. Michele Fournet, Asst. Public Defender, for defendant-appellant.
WATSON, Justice.
Defendant, Zane Lanier Green, was found guilty of forcible rape[1] in violation of LSA-R.S. 14:42.1[2] and sentenced to fifteen *534 years at hard labor, the first two years without benefit of parole, probation or suspension of sentence. On appeal, Green relies on five assignments of error, consolidated into four arguments, for reversal of his conviction and sentence.

FACTS
On September 14, 1980, at approximately 5:00 A.M. the victim, a twenty year old woman sleeping alone in her Baton Rouge apartment, was awakened by a man kneeling beside her bed. The man, who had a flashlight shining in front of his face, put his hand over her eyes and told her not to look at him and she would not be hurt. The assailant taped her eyes, tied her wrists together and then tied her bound hands to the bed post. The intruder then turned on the overhead light, enabling the victim to see his outline, general build, height, haircut and color. After removing her underclothes, the assailant raped her. The rapist then pulled the cord from the telephone, untied her hands from the bed post and told her to stay there until he was gone. When she was sure he had gone, the victim went to her parent's home where the police were called. Some three weeks later, the victim positively identified defendant in a police lineup.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in denying a motion to suppress an inculpatory statement, which was allegedly taken in violation of his Fifth and Sixth Amendment rights.
The statement was obtained under the following circumstances. In late October, 1981, Lieutenant Shortess of the East Baton Rouge sheriff's office telephoned the public defender representing Green and requested a polygraph exam for her client. The defense attorney agreed to the exam but declined to attend. The parties did not formalize any agreement about testing procedure.[3]
According to defense counsel, Lieutenant Shortess told her the police wanted the test because they felt defendant was the wrong man. Counsel agreed to the test because the result could not be used in court. Although she claimed that she indicated, at least by implication, that she did not want her client interrogated beyond the polygraph, counsel did not specify this as a condition. The attorney was unaware it was standard procedure for the polygraphist to confront the person who fails an exam. Although she did not attend the test, she could not remember the specific reason for her absence.
On October 31, 1981, defendant was given a polygraph test by Don Zuelke, a polygraphist whose company was under contract to the sheriff's office. Prior to the test, defendant signed a waiver form and was verbally advised of his Miranda rights by Zuelke.[4] After the one and one half hour test, Zuelke analyzed the result and concluded that defendant was not telling the truth. He confronted Green, who admitted he had committed the rape and two *535 others.[5] Zuelke summoned two police officers into the testing room who readvised defendant of his Miranda rights, before he repeated the inculpatory statement.[6]
Fifth Amendment Claim
Before a confession or inculpatory statement can be introduced into evidence, the state has the burden of proving affirmatively, beyond a reasonable doubt, that it was free and voluntary, and not made under the influence of fear, duress, menaces, threats, inducements, or promises. State v. Burkhalter, 428 So.2d 449 (La., 1983); State v. West, 408 So.2d 1302 (La., 1982); State v. Henry, 352 So.2d 643 (La., 1977). Additionally, it must be shown that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. Henry, supra; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court's conclusion about the admissibility of a confession will not be disturbed if supported by the evidence. State v. Burkhalter, supra.
Defendant concedes that he waived his right to remain silent during the polygraph testing, but argues that the waiver did not extend to the post-test questioning. After the testing, he contends that failure of the polygraphist to repeat his Miranda rights and secure the presence of his attorney renders the statements inadmissible.
In State v. Sonnier, 380 So.2d 1 (La., 1980), defendant sought to suppress an inculpatory statement which was the fruit of a polygraph examination. As a preliminary step to the examination, Sonnier was asked if he knew why he was there. Sonnier admitted his participation in the crime. The court rejected defendant's argument that the statement was "part of the process" of the polygraph examination and therefore inadmissible under State v. Catanese, 368 So.2d 975 (La., 1979).[7] The statement was not a "result" of a polygraph exam because it was made before the test began. Sonnier held that the statement was voluntary and admissible.
In State v. Henry, 352 So.2d 643 (La., 1977) defendant gave an inculpatory statement during the course of a polygraph exam conducted according to a detailed written agreement. Henry held the confession was voluntary, stating that "his decision to confess, then, was a reaffirmation of his earlier waiver." 352 So. at 647. Habeas corpus relief was granted in State v. Henry, supra. Henry v. Dees, 658 F.2d 406 (5 Cir., 1981). Applying a "totality of the circumstances" test, the United States Fifth Circuit concluded that Henry's statements were not freely and voluntarily made and should have been suppressed. Considered important were the facts that the examination was aborted and a definitive test result was never secured.[8] The court found that Henry's mental capacity[9] brought into serious question his ability to understand the waiver forms he executed. Further, the court noted that neither Henry nor his counsel contemplated that Henry *536 would be exposed to "questioning which was not an integral part of a polygraph examination." 658 F.2d at 410.
Other federal appellate decisions have reached contrary results. In Keiper v. Cupp, 509 F.2d 238 (9 Cir., 1975) the appellant challenged the voluntariness of his post-polygraph statement. He had been given his Miranda rights prior to the test. The Ninth Circuit held that the statement was voluntary, finding no authority "to support appellant's contention that he should have been given another Miranda warning after being told of the `gross deceptive patterns' revealed in his polygraph test." 509 F.2d at 241. See also United States v. Little Bear, 583 F.2d 411 (8 Cir., 1978).
In Fields v. Wyrick, 682 F.2d 154 (8 Cir., 1982), Edward Fields sought habeas corpus relief after a state court conviction for rape. Fields, following consultation with his retained counsel, had requested a polygraph examination. Prior to testing, he signed a written consent document informing him of his Miranda rights. Despite the waiver form, Fields was advised that he had the right at any time to stop answering questions and speak with his lawyer. At the conclusion of the two hour test, the examiner told Fields there had been some deceit and asked if he could explain his answers. Fields then admitted having sexual intercourse with the eighty-one year old victim but said she had instigated and consented to it. Police were brought in, who readvised Fields of his Miranda rights, before he repeated his version of the crime. This "confession" had been introduced at Field's state court trial. The Eighth Circuit found that Fields waived his right to have counsel present while the polygraph examination itself was being conducted, but the state had failed to satisfy its burden of proving that Fields knowingly and intelligently waived his Fifth Amendment right to have counsel present at the post-test interrogation. The court suggested that if the examiner had provided new Miranda warnings prior to the post-test interview there would have been no violation.
The United States Supreme Court in an eight to one per curiam opinion reversed the Eighth Circuit. Wyrick v. Fields, ___ U.S. ___, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). Under the "totality of the circumstances" analysis of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), Fields validly waived his right to have counsel present at the post-test questioning. The Eighth Circuit "rule" that the police must again advise the suspect of his rights before questioning him about the results of the polygraph was characterized as illogical.
"[T]he questions put to Fields after the examination would not have caused him to forget the rights of which he had been advised and which he had understood moments before. The rule is simply an unjustifiable restriction on reasonable police questioning." Id. ___ U.S. ___ at ___, 103 S.Ct. 394 at 397, 74 L.Ed.2d 214 at 219.
The holding rested exclusively on Fifth Amendment considerations.
The reasoning of Wyrick v. Fields, supra, is persuasive. Green was advised of his rights before the testing. He had not previously asserted his right to counsel in any police interrogation. His attorney had agreed that her client could take the test; set no parameters for its conduct; and chose not to attend.
Green freely attended the test, after being advised of his Miranda rights, including his right to have his attorney present. He was advised that he could terminate the interview and leave at any time. At the conclusion of the one and a half hour test, defendant was confronted with his failure to tell the truth and gave an inculpatory statement.
In the totality of these circumstances, Green voluntarily waived his Fifth Amendment rights to silence and presence of counsel during his post-testing interrogation.
Sixth Amendment Claim
Defendant asserts that his inculpatory statement should have been suppressed because *537 law enforcement personnel misled his attorney in securing permission for the polygraph test, thereby interfering with his Sixth Amendment right to effective counsel. Wyrick v. Fields, supra, left open the issue of whether the post-polygraph interrogation violated Fields' Sixth Amendment right to counsel. On remand, the Eighth Circuit held that the defendant voluntarily, intelligently, knowingly and intentionally relinquished his Sixth Amendment right to have counsel present at his post-polygraph examination questioning. Fields v. Wyrick, 706 F.2d 879 (8th Cir., 1983).
The Sixth Amendment guarantees an accused the right to assistance of counsel. Government authorities cannot deny a lawyer reasonable access to the client, or ignore a request to confer with the client prior to or during an interrogation. State v. Trevathan, 414 So.2d 316 (La., 1982); State v. Matthews, 408 So.2d 1274 (La., 1982). Once an accused asserts his right to counsel, interrogation must cease. State v. Thucos, 390 So.2d 1281 (La., 1980); State v. Manning, 380 So.2d 46 (La., 1980).
After counsel is appointed, defendant may waive his Sixth Amendment right to legal representation when the government interrogates him. Moore v. Wolff, 495 F.2d 35 (8 Cir., 1974). It is incumbent upon the state to prove an intentional abandonment of a known right and rebut every reasonable presumption against waiver. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); State v. Harper, 430 So.2d 627 (La., 1983); State v. Trevathan, supra.
Green was represented by an appointed attorney. Defendant apparently never indicated that he would speak to the police only in the presence of his attorney. The police contacted defendant's attorney and secured her consent to the polygraph test. The attorney had the right to be present at the test but chose not to attend. The defendant was advised that his attorney could be present at the test, but chose not to have her there.[10]
Because defendant's Fifth and Sixth Amendment rights were not violated, the trial court correctly refused to suppress defendant's inculpatory statement.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends the trial court erred in overruling his objection to admission of his inculpatory statement. At trial, the polygraphist testified that Green gave his inculpatory statement during an "interview". There was no reference to the other two rapes and the fact that the polygraph test had been conducted.
Defendant correctly contends that he is entitled to insist upon introduction of the entirety of a statement used against him. LSA-R.S. 15:450;[11]State v. Haynes, 291 So.2d 771 (La., 1974). However, a defendant may waive the benefit of the protective statute. State v. Snedecor, 294 So.2d 207 (La., 1974).
"Consequently, when the state seeks to introduce a confession, admission or declaration against a defendant which contains other crimes evidence, but which is *538 otherwise fully admissible, the defendant has two options. He may waive his right to have the whole statement used, object to the other crimes evidence, and require the court to excise it before admitting the statement; or, he may insist on his right to have the statement used in its entirety so as to receive any exculpation or explanation that the whole statement may afford." State v. Morris, 429 So.2d 111 at 121 (La., 1983).
Defendant also contends that his statement was taken under circumstances ordinarily inadmissible, i.e., during a polygraph exam, and he was confronted with a constitutionally impermissible choice of foregoing the exculpatory benefits of explaining the circumstances or allowing the jury to hear inadmissible other crimes evidence.
Green's statement was not given during a polygraph exam, but after. The Snedecor line of cases control. LSA-R.S. 15:450 guarantees the right to have an entire statement offered in evidence. This option was available to Green but he chose to have references to other crimes deleted.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends the trial court erred when it allowed the state, over defense objection, to introduce evidence to establish the credibility of the victim-witness before her credibility was attacked.
On direct examination, the prosecutor was permitted to question the victim as to her education and employment history.[12] Testimony to establish the credibility of a witness is not normally admissible until that credibility has been attacked. LSA-R.S. 15:484.[13]State v. Passman, 345 So.2d 874 (La., 1977); State v. Boyd, 359 So.2d 931 (La., 1978). Nevertheless, a trial court does not err by allowing a few questions to any witness concerning age, family status, education and employment. Some knowledge of a witness' background is fundamental to the fact-finding process and is not prejudicial to the defendant.
Here, defendant has not shown any prejudice. The defense did not dispute the fact of the rape but focused on alleged mistaken identity.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER SIX AND SEVEN
The defendant assigns as error the imposition of a constitutionally excessive sentence and the failure of the sentencing judge to follow the guidelines of LSA-C. Cr.P. art. 894.1.
Article I, § 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. State v. Sepulvado, 367 So.2d 762 (La., 1979). A sentence is unconstitutionally excessive when it is grossly out of proportion to the severity of the offense or inflicts purposeless and needless pain and suffering. State v. Reed, 409 So.2d 266 (La., 1982).
Defendant's fifteen year sentence is less than one half the statutory maximum penalty of forty years for forcible rape. A sentence within statutory limits may yet be constitutionally excessive. State v. Sepulvado, supra; State v. Daranda, 398 So.2d 1053 (La., 1981).
Sentence review must take into consideration the trial court's wide discretion in imposing sentences within the statutory limits. Sentences should not be disturbed as excessive absent manifest abuse of discretion. State v. Reed, supra.
*539 At sentencing, the trial court considered the defendant's age, juvenile record, emotional problems, drug abuse, and other pending charges.[14] The court noted that defendant had no past history of sexual deviation and that his victim was not physically harmed beyond the trauma of the rape. Opposed to these mitigating factors was defendant's need of a custodial environment because he presented an undue risk to society.
There was compliance with LSA-C.Cr.P. art. 894.1 and the fifteen year sentence is not grossly disproportionate to the offense.
These assignments lack merit.

DECREE
For the foregoing reasons, the conviction and sentence of defendant, Zane Lanier Green, are affirmed.
AFFIRMED.
DENNIS, J., concurs with reasons.
NOTES
[1] Defendant's first trial resulted in a mistrial on December 16, 1981. The second trial began on February 3, 1982.
[2] LSA-R.S. 14:42.1 provides:

"Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
"Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than two nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence."
[3] "Q. All right. Was there any specifics of what was to happen at the polygraph, was there any ground rules laid out between you and Ms. Fournet?

"A. No rules at all, just polygraph, that was it.
"Q. Did you indicate to her or did you tell her that the polygraph might free the man or was there any understanding about the admissibility of it or anything?
"A. I told her, you know, if he passed the polygraph I'd do what I could, you know. I said that I'd talk to the D.A.'s Office or whoever was involved.
"Q. At any time specifically did she tell you after the polygraph not to question the defendant?
"A. No, sir, she didn't.
"Q. Okay. At any time did she tell you not to inform the defendant of the results of the polygraph after it was given?
"A. No, sir, we didn't go into anything just other than a polygraph exam." (Tr., Motion to Suppress, p. 40)
[4] Don Zuelke formerly worked for the East Baton Rouge sheriff's office.
[5] "A. Immediately upon completing the analyzation of the charts and formulating an opinion based upon those charts I confronted Mr. Zane and told him that he had in fact, in my opinion, not told the truth during the exam.

"Q. Okay. And what was his reactions?
"A. Zane, uh, then began to insinuate that he could not remember whether or not he had done it. And I then asked Zane if he could have possibly committed the rape and he said at first that he possibly could have but did not remember doing it. * * * He then broke down and cried and told me that he had, in fact, committed the rape that we were testing him on along with the two other rapes that were in question."
(Tr., Motion to Suppress, p. 49)
[6] Defendant was then returned to the detective bureau but refused to give a formal statement pending consultation with his attorney.
[7] State v. Cantanese, supra, held that evidence of polygraph examination is not admissible in criminal trials.
[8] Under standard procedure the examiner asked the examinee a prepared battery of questions, stopped, and then repeated the questions. In Henry's exam, the polygraphist asked the first twelve questions, stopped the questioning and informed Henry that he "failed".
[9] Henry was classified as an educable mental retardate with an I.Q. between sixty-five and sixty-nine. His reading skills were on a second grade level.
[10] Defendant argues State v. Weedon, 342 So.2d 642 (La., 1977). In Weedon, the defendant was arrested at home in the presence of his attorney. The attorney gave permission for Weedon to answer questions for the arrest register, but told police not to question him about anything pertaining to the crime. At booking, a second officer asked the date and time of the offense. The responses were used at trial in violation of Weedon's right to counsel. The court noted, "The accused's constitutional rights against self-incrimination and to the effective assistance of counsel cannot be prejudiced by the state's failure to honor its agreement not to question the accused about the crime unless his attorneys are present." 342 So.2d at 645. Here, there was no agreement between counsel and the police. Weedon does not control.
[11] LSA-R.S. 15:450 provides:

"Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford."
[12] When defense counsel objected to the line of questioning the prosecutor replied:

"Well, I have a witness here who is I guess a stranger to the jury and I'd like the jury to know something about her since I'm sure, you know, her credibility will be focused upon." (Tr., pp. 8-9)
[13] LSA-R.S. 15:484 provides:

"Before a witness has been sworn he can be neither corroborated nor impeached, nor is testimony to establish the credibility of a witness admissible until that credibility has been attacked."
[14] Green was twenty years old at the time of sentencing. He admitted to one Alabama car theft offense as a juvenile for which he received five years probation. There is a pending possession with intent to distribute charge and a rape charge not billed.