303 So.2d 734 (1974)
STATE of Louisiana, Appellee,
v.
Harriet JACKSON, Appellant.
No. 54953.
Supreme Court of Louisiana.
October 28, 1974.
Rehearing Denied November 27, 1974.
*735 Ronald J. Rakosky, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. C. Falkenheiner, Dist. Atty., for appellee.
TATE, Justice.
The defendant was convicted of simple kidnapping, La.R.S. 14:45, and sentenced to five years at hard labor. We find merit to her Bill of Exceptions No. 2 and therefore reverse.
Bill of Exceptions No. 2
This bill was taken to the denial of motion to suppress a 34-minute videotaped statement taken from the defendant on July 19, 1973. This statement was taken after, unknown to her, her family had retained an attorney to represent her. It amplified an earlier videotaped statement taken from her (see Bill No. 1, below), and enlarged her admission of participation in helping others to kidnap a baby under her care.
The substance of the attack on the admissibility of this videotaped statement is: (1) It was taken in the face of a request from her newly-retained counsel that no further interrogation of her be made until he could consult with his client, and thus is inadmissible by reason of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964) and similar decisions; (2) No knowing and intelligent waiver of the assistance of counsel was made, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461 (1938), since the interrogating officer deliberately withheld from the defendant the information that an attorney had called and had stated that he had been retained to represent her and did not desire her to be interrogated until he, the attorney, had conferred with her.
The facts are virtually undisputed:
The defendant was arrested for the kidnapping on July 17, two days before the present statement was made. She was interrogated and an initial statement was taken at that time.
At 2:25 P.M. on July 19 (the date of the present statement), attorney Rakosky of *736 New Orleans called the sheriff's office in Vidalia, where the defendant was in prison. According to telephone records, the call lasted nine minutes. The person on the other end of the line was informed of the caller's identity and that the attorney calling had been retained to represent the defendant, with the request that she not be interrogated further until the attorney could confer with her, within the next twenty-four hours. The district attorney had also been called, but was out; a telephone return message was left at his office.
At 2:56 P.M. some thirty minutes later, two deputies in the building commenced interrogating the defendant prisoner, consequent to which they secured the damaging videotaped statement here attacked. She was once again given her Miranda warnings. Then, she was asked the following questions, to all of which she replied in the negative:
"Do you have a lawyer?" "You haven't retained a lawyer?" "Have you been in contact with a lawyer?" "To your knowledge has anyone been in contact with a lawyer?" "Are you familiar with a man named Ronald Rakosky?" "Have you ever heard his name before?" "You never heard of Ronald Rakosky?" "Do you know a phone number in New Orleans, 581-2688?" "Is that phone number familiar to you?" "Do you know if your husband, Parish Jackson, retained a lawyer for you?" "You have not asked anyone to contact a lawyer for you?"
Following the series of negative responses, she was immediately questioned further about her earlier statement and as to whether any part of it was an untruth. She immediately admitted that not all of the former statement was truthful and now furnished details more directly involving her in assistance to the kidnappers than had the earlier statement. The interrogation continued until 3:30 P.M.
At 3:15 P.M. the district attorney returned attorney Rakosky's call. They talked about thirteen minutes. The official admits that Rakosky told him he was an attorney and had been retained to represent the defendant Jackson. The district attorney testifies that he told the lawyer that the sheriff was investigating the case and that the lawyer should contact the sheriff's office.
Attorney Rakosky then talked by telephone with the sheriff for thirteen minutes, commencing at 3:35 P.M.
The office of the district attorney, the office of the sheriff, and the office in which the prisoner was being interrogated are all in the same small building.
The sheriff and district attorney apparently felt they were under no duty to at least check on the validity of the information conveyed by the call from a New Orleans lawyer of whom they had not heard. Our learned trial brother apparently felt that the New Orleans lawyer could not be considered as representing the prisoner, since he was not enrolled as counsel and since he had filed no proceedings.
The constitutional rights to counsel and to remain silent upon advice of counsel cannot be evaded so simply. One cannot avoid the prisoner's constitutional right to the advice of counsel retained by her by totally ignoring his claim of representation, until after such time as the interrogation had been completed and damaging admissions secured from her.
A simple call to the lawyer's office (or to the state bar, for instance) could have assured the officials of the legitimacy of the caller's status as an attorney, subject to disciplinary penalty if he had made misrepresentation. The fact that a prisoner does not know her family has retained an attorney for her, when one in fact has been retained, does not justify governmental officials to ignore her constitutional right to such counsel.
The circumstances and initial questioning of the interrogation do much to substantiate the defendant's claim that, upon learning *737 from the telephone call that New Orleans counsel had been retained to represent her, the prisoner was immediately fully interrogated before her lawyer could advise her. Further, without dispute, the officials did not inform the prisoner that a lawyer had called, had stated he had been retained to represent her, and had asked that she not be interrogated until her lawyer could confer with her during the next few hours.
Under these circumstances, the interrogation was made without an informed waiver of the defendant's right to the assistance of counsel and to remain silent. When counsel has been retained to represent a prisoner, the governmental authorities cannot deny the lawyer reasonable access to his client, nor may they ignore his request that he be allowed to confer with his client prior to, if not during, the interrogation. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). See also American Law Institute Model Code of Pre-Arraignment Procedure, Section 140.7 (Tentative Draft No. 6, April 1, 1974). Confessions taken in violation of these principles are constitutionally inadmissible.
The essential reasons for the constitutional right of access to counsel lie in principles of fundamental fairness safeguarding the rights of an individual against potential governmental abuse, as well as in protecting the integrity of the truth-finding process. As stated in Miranda v. Arizona, 384 U.S. 436, 465-467, 86 S.Ct. 1602, 1623-1624, 16 L.Ed.2d 694, 718-719 (1966):
"A different phase of the Escobedo decision was significant in its attention to the absence of counsel during the questioning. There, as in the cases today, we sought a protective device to dispel the compelling atmosphere of the interrogation. * * *
"It was in this manner that Escobedo explicated another facet of the pre-trial privilege, noted in many of the Court's prior decisions: the protection of rights at trial. That counsel is present when statements are taken from an individual during interrogation obviously enhances the integrity of the fact-finding processes in court. The presence of an attorney, and the warnings delivered to the individual, enable the defendant under otherwise compelling circumstances to tell his story without fear, effectively, and in a way that eliminates the evils in the interrogation process. Without the protections flowing from adequate warning and the rights of counsel, `all the careful safeguards erected around the giving of testimony, whether by an accused or any other witness, would become empty formalities in a procedure where the most compelling possible evidence of guilt, a confession, would have already been obtained at the unsupervised pleasure of the police.' * * *
"We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored."
The conviction must be reversed, since this constitutionally inadmissible confession was allowed in evidence.
Bill of Exceptions No. 1
The remaining bills concern alleged errors which are not necessarily pertinent to any new trial on a charge of simple kidnapping, with the exception of Bill No. 1.
Bill No. 1 was taken to the denial of a motion to suppress an earlier videotaped statement, the one taken on July 17 soon after her arrest. The chief complaint as *738 to this statement is that it was based upon alleged defects in the arrest warrant and the supposed lack of probable cause for it.
Although we do not find merit to the contention that the arrest warrant was defective, we prefer to rest our holding of admissibility on another ground: The evidence shows that the statement of July 17 was freely and voluntarily made, before counsel had been retained and only after full explanation of the defendant's Miranda rights and understanding waiver thereof, without (as in the other confession) the law enforcement authorities withholding information required for intelligent waiver of the Miranda rights.
We are cited do no authority that would bar admission of such a statement because of an alleged technical illegality in the initial arrest, if subsequent to it the statement is freely and voluntarily given after full Miranda warnings. See McCormick on Evidence, Section 156 (2d ed., 1972). In our view, the state sufficiently proved the first partial confession to be truly voluntary, with the detention pursuant to the formally executed arrest warrant being no more an operative factor in causing the defendant to speak than in the case of any normal custodial interrogation.
Bill No. 1 is without merit.

Decree
For the foregoing reasons, the conviction and sentence are set aside, and this case is remanded for a new trial in accordance with law.
Reversed and remanded.
SANDERS, C. J., and MARCUS and SUMMERS, JJ., dissent and assign written reasons.
SANDERS, Chief Justice (dissenting).
The holding of the majority, in my opinion, represents an unwarranted extension of the decision of the United States Supreme Court in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).
As pointed out by the United States Supreme Court itself, the Escobedo principle applies only when "the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent..." Johnson v. New Jersey, 384 U. S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). See also State v. Page, 251 La. 810, 206 So.2d 503 (1968); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966), cert. den., 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374; State v. Bourg, 248 La. 844, 182 So.2d 510 (1966), cert. den., 385 U.S. 866, 87 S.Ct. 127, 17 L.Ed.2d 93.
In the present case, in full compliance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the officers advised the defendant of her right to remain silent and of her right of immediate access to counsel. Nonetheless, she voluntarily chose to explain her participation in the crime. I conclude that there was a valid waiver of counsel and that the contested statement was properly admitted.
The majority's holding allows an attorney's telephone call to a secretary in the Sheriff's Office to frustrate the agency's investigation of a major crime. I find nothing in the decisions of the United States Supreme Court or of this Court to justify the holding.
For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964) held that the refusal to honor the accused's request to consult with his attorney constituted a denial of his right to assistance of counsel under the sixth and fourteenth amendments. Here, the accused did not request counsel nor was any request for counsel by *739 the accused refused. Further, she was fully given her Miranda warnings prior to the interrogation. I consider the majority opinion an unreasonable extension of Escobedo. Accordingly, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned in the two dissenting opinions of the Chief Justice and Mr. Justice Marcus.