408 So.2d 1274 (1982)
STATE of Louisiana
v.
Lee MATTHEWS.
STATE of Louisiana
v.
Cleo MATTHEWS.
Nos. 81-K-1591, 81-K-1691.
Supreme Court of Louisiana.
January 25, 1982.
*1275 Frank J. Uddo, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, David C. Loeb, Asst. Dist. Attys., for plaintiff-respondent.
DENNIS, Justice.
The critical question in this case is whether, under the circumstances, the police denied defendants the right to remain silent, the right against self-incrimination, and the assistance of counsel during in-custody interrogation in violation of Article 1, § 13 of the 1974 Louisiana Constitution, by rejecting their defense attorney's request to speak to the interrogating officer and by failure to inform defendants their attorney was seeking to assist them.
On December 18, 1980 Lee Sherman Matthews received a call at work from his wife who informed him the police had called his house and wanted to speak to him about the drowning of his neighbor, Dorothy Penino. Matthews called his attorney, Frank Uddo, who advised him to say nothing to the authorities if he were to be arrested before they could confer. At about 4:00 p. m., Matthews was arrested at his place of business for the first degree murder of Dorothy Penino and taken to the police station. Cleo Matthews, his wife, was arrested at her residence for the same offense at about 4:30 p. m. and taken to the police station.
Shortly after the Matthews reached the police station and were placed in separate interrogation rooms, their attorney, Frank Uddo, placed a call to the police station. The lawyer described the ensuing events in the following terms:
"* * * [A]bout 5 o'clock or maybe a little bit before 5 o'clock I received a call from Paul Marchadie being the step son of Lee Matthews. Paul Marchadie indicated to me at that time that Lee Matthews had been arrested and that his mother had been arrested and and that they had been arrested on the charge of first degree murder.
"Immediately thereafter I called the Jefferson Parish Sheriff's Department and particularly at the Westbank Police Station at the Old Gretna Courthouse. I was not aware of the name of the person with whom I spoke. He indicated that he was a police officer and I told him at that time that I wanted to speak with Lee Matthews. HeI held on the phone for quite sometime. Iafter he came back on, he told me that Detective Nuzzolillo was handling it. Well, he didn't use Nuzzolillo. He said Detective Marco was handling it and that he talked with him and he said that I could not speak with Lee Matthews at the present time; that there was an interview being conducted and at that time I said, I don't want anybody interviewing my client. I said my client has a constitutional right to have his attorney present during any interviews *1276 and I don't want anybody conducting any interviews or taking any statements from my client without me present. He said, well, I'll have him call you. I waited for sometime. I didn't get a call. * * * Thereafter [at 8:00 or 8:30 p. m.] not having heard anything I came over to Gretna to the police station. I went to the front desk and I told the officer at the front desk who I was and that I wanted to speak with my client.
"I waited downstairs for approximately one half hour before I wasI was brought in. Thereafter, I did talk to my client and to Detective Nuzzolillo and to Detective Masson and Cleo Matthews and at that time it was indicated to me that statements had been given by everybody. * * *"
Lee Matthews testified that he asked to talk to his attorney on three occasions before giving a statement in response to interrogation: when he was arrested, upon reaching the police station, and just before he signed a waiver of rights form. He stated that the police officers told him his wife was in custody and charged with first degree murder, that she had implicated him in the crime, that if he made a statement it could exonerate her, and that his wife and his daughter were having an affair with the same man. Cleo Matthews and her daughter, Diana James, testified that when Mrs. Matthews was arrested the officers refused to let Miss James call a lawyer at her mother's request. Mrs. Matthews stated that a police officer promised that if she told the truth he would see that the magistrate let her out of jail to care for her two teenage sons and see that she was not discharged by her employer. She testified that before she gave her statement the officer told her that her husband had confessed and had implicated one of her sons by a previous marriage.
The police officers denied that either defendant requested an attorney or attempted to call one. They denied making the coercive or inducing statements attributed to them by the Matthews. One officer admitted questioning Lee Matthews about whether his wife and daughter were having an affair with a certain individual. He contended that the question was pertinent to his investigation because extra marital activities were prevalent in the Matthews' neighborhood. He admitted telling Mrs. Matthews that her husband had made some admissions before she gave her statement, but he denied telling Mr. Matthews that his wife had confessed.
It is undisputed that the defendants' attorney, Frank Uddo, telephoned the police station, identified himself to the cadet desk officer as the Matthews' lawyer, and asked to talk to the officer conducting the interrogation.[1] All of the officers denied that the lawyer requested or demanded that his clients not be questioned in his absence. The cadet officer who answered the phone stated that after conferring with the officer in charge of the case he told Mr. Uddo the interrogation could not be interrupted and that the attorney would have to come to the station to talk to the interrogating officer; to this, he said, Mr. Uddo replied, "fine," and hung up.
Lee Sherman Matthews was indicted for second degree murder, La. R.S. 14:30.1. His wife, Cleo Matthews, was indicted for acting as an accessory after the fact of second degree murder, La. R.S. 14:25 and 14:30.1. Both defendants filed motions to suppress inculpatory statements given to police officers following their arrests. The motions in each case were denied after a hearing. We granted certiorari to consider whether the statements were obtained in violation of defendants' right to remain silent, right against self-incrimination, and *1277 right to the assistance of counsel guaranteed by Article 1, § 13 of the 1974 Louisiana Constitution.
The trial judge, who denied the defendants' motions to suppress without reasons, apparently resolved the many conflicts in the testimony in favor of the prosecution. Although we perhaps would have made different factual findings, we defer to the trial judge's credibility assessments because he was there and saw the witnesses as they testified. Evidently, he also decided it was immaterial that the officers rejected the defense attorney's request to talk to the interrogating officer and did not inform the Matthews that their attorney was seeking to assist them. In this determination, however, he fell into an error of law.
In a case which arose before the adoption of our present constitution, this court held that when counsel has been retained to represent a prisoner, the government authorities cannot deny the lawyer reasonable access to his client, nor may they ignore his request that he be allowed to confer with his client prior to, if not during, the interrogation; and that confessions taken in violation of these principles are constitutionally inadmissible because the interrogation was made without an informed waiver of the defendant's right to the assistance of counsel and to remain silent. State v. Jackson, 303 So.2d 734 (La.1974) citing Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed. 246 (1964). See also, American Law Institute Model Code of Pre-Arraignment Procedure, Section 140.7 (Tentative Draft No. 6, April 1, 1974).
If it was not evident from our holding in State v. Jackson, supra, it is now clear that the constitutional and statutory policy of our state favors a person having the assistance of counsel during in-custody interrogation and prohibits any interference with it by governmental authorities. Article 1, § 13 of the 1974 Louisiana Constitution requires that any person arrested or detained in connection with the investigation or commission of any offense must be advised fully of the reasons for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. This guarantee clearly affords a person subjected to in-custody interrogation the right to assistance of retained or appointed counsel, including the right to have counsel present during any questioning if the person so desires. By the adoption of Article 1, § 13, Louisiana enhanced and incorporated the safeguards of Miranda v. Arizona. In Re Dino, 359 So.2d 586 (La.1978); L. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L. Rev. 1, 41 (1974). Statutorily, a person arrested has, from the moment of his arrest, a right to procure and confer with counsel and to use a telephone or send a message for the purpose of communicating with his friends or with counsel. La.C.Cr.P. art. 230. The accused in every instance has the right to defend himself and to have the assistance of counsel. His counsel shall have free access to him, in private, at reasonable hours. La.C.Cr.P. art. 511.
In State v. Jackson, supra, a New Orleans attorney, who had been employed by her family to represent a woman in custody in Vidalia without her knowledge, called the sheriff's office and requested that she not be interrogated further until he could confer with her within the next twenty-four hours. The officers asked the woman if she had a lawyer, if she knew a man by the name of the attorney who had called, and if anyone had contacted a lawyer for her. Following a series of negative responses, she was immediately questioned further and gave an incriminating statement. The officials did not inform her that a lawyer had called, had stated he had been retained to represent her, and had asked that she not be interrogated until her lawyer could confer with her during the next few hours. This court held that by these acts the enforcement officers prevented the woman *1278 from receiving the assistance of her attorney and from making an informed waiver of her rights.
The differences between this case and Jackson are too minor and shadowy to justify a departure from the well-considered conclusion there reached with reference to the right of a person held in custody to the assistance of counsel. Although the Matthews' attorney may not specifically have asked the cadet desk officer for a delay in the interrogation until he could confer with his clients, he clearly identified himself as a local attorney seeking to render assistance to the Matthews regarding the matter under investigation and requested to speak to the officer in charge of their interrogation. Had the attorney been allowed to speak to the officer in charge he would have learned of the charges against his clients and that they were currently under interrogation, and, as he had already admonished Lee Matthews not to speak with police until they could confer, he undoubtedly would have requested that the interrogation cease until he could speak with his client. Had the Matthews been informed of the attorney's call they would have confirmed that he represented them in the matter and, if made aware of his availability, possibly would have exercised their right to confer with him before giving a statement.
Under these circumstances, the refusal by the officer in charge to communicate with the attorney or to inform the Matthews that their attorney was available and seeking to assist them was an unwarranted interference with the defendants' right to the assistance of their attorney. Because this information was withheld from the Matthews the subsequent interrogation was made without an informed waiver of the defendants' right to the assistance of counsel and to remain silent. La.Const. art. 1, § 13; La.C.Cr.P. art. 230, cf. art. 511. State v. Jackson, supra. Cf. State v. Weedon, 342 So.2d 642 (La.1977); State v. West, 408 So.2d 1114 (La.1982).
As in State v. Jackson, we do not hold that an arrested person, not yet indicted or formally charged with the crime, cannot voluntarily and after proper warnings waive consultation with counsel and make voluntary statements which will be admissible against him. See State v. Cotton, 341 So.2d 355 (La.1977); State v. Haynes, 288 Or. 59, 602 P.2d 272, 277 (1979). We hold that when, unknown to the person in this situation, an identified attorney is actually available and seeking an opportunity to render assistance to him, and the police do not inform him of that fact, any statement or the fruits of any statement obtained after the police themselves know of the attorney's efforts to assist the arrested person cannot be rendered admissible on the theory that the person knowingly and intelligently waived counsel. See State v. Jackson, supra; State v. Haynes, supra. A suspect indifferent to an abstract offer to call a nameless lawyer may regard differently his opportunity to talk to an identified attorney actually available and willing to assist him during interrogation. See State v. Haynes, supra. Further, the authorities may not ignore or refuse to communicate with an attorney seeking to assist his client. State v. Jackson, supra. No system worth preserving should have to fear that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, his rights. Escobedo v. Illinois, at n. 13; Jackson, supra. Accordingly, it is the policy of this state to welcome and encourage an attorney to confer with his client in order that he may intelligently exercise his rights during custodial interrogation.[2] La.Const. art. 1, § 13; La.C.Cr.P. arts. 230, 511.

Decree
For the reasons assigned, the trial court's rulings are amended to grant the motions *1279 to suppress as to the statements elicited from the Matthews after the officer in charge refused to communicate with their attorney or to inform them of his attempt to assist them, and the case is remanded for further proceedings.
TRIAL COURT RULINGS AMENDED; REMANDED.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents and will assign reasons.
LEMMON, J., concurs and assigns reasons.
MARCUS, Justice (dissenting).
The majority holds that when, unknown to an arrested person, an identified attorney is actually available and seeking an opportunity to render assistance to him, and the police do not inform him of that fact, any statement or the fruits of any statement obtained after the police themselves know of the attorney's efforts to assist the arrested person cannot be rendered admissible on the theory that the person knowingly and intelligently waived counsel. I consider the majority opinion an unreasonable extension of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). See also my dissenting opinion in State v. Jackson, 303 So.2d 734 (1974). Accordingly, I respectfully dissent.
LEMMON, Justice, concurring.
When a lawyer, retained by the defendant to represent him in connection with the specific matter under investigation, notifies police that he is trying to contact his client, the police must so inform defendant before initiating or continuing interrogation without presence of counsel. Such information is necessary in order for the defendant to make an intelligent waiver of his right to counsel in a police-dominated atmosphere.
BLANCHE, Justice (dissenting).
The trial judge, in denying the motion to suppress, made a credibility call in favor of the state. All of the officers denied that defendants' counsel either requested or demanded that the defendants not be questioned in his absence. Accordingly, the record supports a finding that the confessions were free and voluntary.
The majority opinion also stands for the proposition that once an attorney calls the station house and announces his representation of an accused, unless this fact is communicated to the accused, any statement made by him thereafter is inadmissible on the theory that he did not knowingly and intelligently waive his right to counsel. Such a holding extends the right to counsel *1280 beyond the contemplation of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and leads this writer to believe that the next step is to prevent all police questioning after arrest unless counsel is present.
I respectfully dissent.
NOTES
[1] At one point in his testimony the officer in charge of the interrogation stated that Mr. Uddo called and asked to talk to his client, Lee Matthews. This may have been an inadvertent statement because during the rest of the hearing he and the other policemen present at the station during interrogation claimed that Mr. Uddo called and asked only to talk to the officer conducting the interrogation.
[2] Our holding is similar to the rules formulated by other jurisdictions. People v. Pinzon, 44 N.Y.2d 458, 406 N.Y.S.2d 268, 377 N.E.2d 721 (1978) (police must maintain procedures to insure attorney may communicate with person in custody and with official in charge of investigation without unreasonable delay); People v. Hobson, 39 N.Y.2d 479, 384 N.Y.S.2d 419, 348 N.E.2d 894 (1976) (once attorney enters proceeding, police may not question defendant in absence of counsel without affirmative waiver of right to counsel, made in presence of an attorney); In re Garth, 55 Cal.App.3d 986, 127 Cal.Rptr. 881 (1976) (interrogation by police without prior notification of appointed attorney is unconstitutional); Giddlings v. State, 290 N.W.2d 595 (Minn.1980) (where defendant is represented by counsel, both custodial and noncustodial interrogation of defendant outside presence of attorney is strongly disapproved); Lee v. State, 455 S.W.2d 316 (Tex.Cr.App.1970) (caution is urged on State in taking statements in absence of counsel if attorney has been appointed or retained); Commonwealth v. McKenna, 355 Mass. 313, 244 N.E.2d 560 (1969) (police action which delayed counsel in reaching client violated defendant's constitutional rights); State v. Stephens, 300 N.C. 321, 266 S.E.2d 588 (1980) (state failure to notify attorney, who was present and available, of his client's interrogation resulted in inadmissible statement); United States v. Smith, 379 F.2d 628, cert. denied 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486 (C.A.Ill.1967) (Miranda applies with greater force to preclude admission of statements made in custody after known retainer or appointment of counsel and without counsel's presence or approval) (citing 18 U.S. C.A. 6 § 3006A); United States v. Thomas, 474 F.2d 110, cert. denied 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (C.A.N.M.1973) (once attorney is retained or appointed, statements made in interview without notice to counsel and reasonable opportunity to be present, are inadmissible).