478 So.2d 589 (1985)
STATE of Louisiana, Appellee,
v.
Clyde ALLEN, Appellant.
No. 17286-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
Rehearing Denied November 27, 1985.
*591 Office of Indigent Defender Richard C. Goorley, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Scott J. Crichton, A.M. Stroud and John Broadwell, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN, FRED W. JONES and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Clyde Allen, was charged by bill of information with attempted first degree murder in violation of LSA-R.S. 14:27 and 14:30. After a jury trial, the defendant was convicted of this offense and sentenced to serve 50 years at hard labor. Finding that a firearm was used in the commission of this felony offense, the trial court applied the provisions of LSA-C. Cr.P. Art. 893.1 and imposed the sentence without benefit of probation, parole or suspension. The defendant now appeals his conviction and sentence urging four assignments of error. However, as assignment of error number two was not argued or briefed, it is considered abandoned. State v. Domingue, 298 So.2d 723 (La.1974).
The record reflects that on the afternoon of December 7, 1983 in downtown Shreveport, the defendant became involved in an argument with another individual, identified as Paul Simmons. A witness to this argument testified that she saw Mr. Simmons grab a shiney silver object from his pocket as he advanced toward the defendant. Backing away, the defendant pulled out a gun and shot Mr. Simmons in the stomach. The defense later argued that this action was in self-defense as a knife was subsequently retrieved from Mr. Simmons.
After the shooting, the defendant left the downtown area and boarded a Shreveport City Bus headed for Linwood Avenue. Police officers arriving at the scene of the shooting, obtained a detailed description of the defendant and learned that he was armed with a large caliber handgun. Witnesses also indicated that the defendant might be on the Linwood bus. This information was then broadcast by radio to police headquarters.
Officer Pat McGaha, patrolling Linwood Avenue in the Cedar Grove area of Shreveport, heard the broadcast of the shooting suspect's description. He also spoke directly with one of the police officers at the scene of the shooting who asked Officer McGaha to try and intercept the bus which could be carrying the suspect. Officer McGaha subsequently located a bus traveling on Linwood Avenue which contained two men who appeared to match the suspect's description. Following the bus on Linwood for some time, Officer McGaha noted that these two men never left the rear of the bus. Officer Johnnie Alvin Coffey, who was also in the area in a separate patrol unit, joined Officer McGaha as he followed the bus. At the corner of Hollywood and Linwood, Officer McGaha turned on his red lights and pulled in front of the bus forcing it to stop. As the bus stopped, Officer Malcolm Butler also arrived, placing his vehicle behind the bus and Officer Coffey's unit.
The officers then left their patrol units and attempted to enter the bus. Officer McGaha proceeded through the front door and into the bus, while the other officers tried to pry open the side door. Officer McGaha testified that as he entered the bus he unsnapped his holster, pulled his gun somewhat loose, and put his hand on the grip. He did not, however, completely withdraw the gun from its holster. Officer McGaha then proceeded down the aisle of the bus, approaching the two men who matched the suspect's description. Officer McGaha did not say anything, as he did not know which of the two men was the proper suspect. While he was looking at the man on his left, the defendant rose from his *592 seat, pointed his gun at Officer McGaha and yelled "You are not going to take me to jail." He then shot Officer McGaha in the left leg. At this time, the bus driver opened the doors and exited the bus. This freed the side door to open which enabled Officers Coffey and Butler to see the defendant as he shot Officer McGaha. Both officers then fired their guns at the defendant. Officer McGaha also managed to fire a shot at the defendant subsequent to his own leg injury. In the gunfire exchange, the defendant was struck and injured.
The defendant was then immediately apprehended and transported to the LSU Medical Center for treatment of his gunshot wounds. Officer McGaha was also transported to a hospital for medical treatment. The following day, December 8, 1983, the defendant was formally placed under arrest for the attempted first degree murder of Officer McGaha and was then advised of his Miranda rights. There was no attempt to interview the defendant at that time due to his medical condition. Later, on December 12, 1983, the defendant was released from the LSU Medical Center and incarcerated in the Shreveport City Jail.
The defendant was then interviewed by police officers at the jail in connection with the shooting of Officer McGaha. The defendant was again informed of his Miranda rights. The defendant stated that he understood those rights and that he wished to waive them. The defendant signed a Miranda rights card and then gave a recorded statement in which he confessed to the shooting of Paul Simmons and Officer McGaha. The police officers interviewing the defendant, became concerned when the defendant referred to both shooting incidents in his statement. In an attempt to clarify and distinguish the two incidents, the police officers obtained a second statement from the defendant after speaking with an assistant district attorney who notified the officers that an attorney had been appointed for the defendant. Prior to the taking of the second statement, the defendant was again advised of his Miranda rights. The officers also informed the defendant that an attorney had been appointed to represent him. The defendant again acknowledged his rights and advised the officers that he was willing to give a second statement without his attorney being present. The defendant later moved to suppress these statements, but after a hearing, the trial court overruled the defendant's motion.

ASSIGNMENT OF ERROR NO. 1
The defendant first contends that the trial court erred in refusing to grant his motion to suppress the statements given to the Shreveport Police Officers on December 12, 1983. He asserts that his constitutional rights were violated as he was not sufficiently informed of the fact that counsel had been appointed to represent him, therefore he could not make a knowing and intelligent waiver of his right to counsel. Defendant's counsel asserts that once the police knew that the defendant was represented by the Indigent Defender's Office, some attempt to contact that office should have been made before the second interview took place. Furthermore, counsel contends that due to the defendant's past history of mental illness and his physical condition at the time of these interviews, the defendant could not make a knowing and intelligent waiver of his right to counsel. Therefore, his statements, admitting the shooting of Officer McGaha, should have been suppressed.
The Louisiana Supreme Court in State v. Leatherwood, 411 So.2d 29, 33 (La.1982) stated:
In addition to proving the voluntariness of a confession, the state must show that a confession obtained during a custodial interrogation was preceded by Miranda warnings and valid waiver of the defendant's constitutional rights. See State v. Payne, 338 So.2d 682 (La.1970). Whether the defendant understood his rights and intelligently waived them is a determination to be made on the facts of each case. State v. Alexander, 339 So.2d 818 (La.1976).
*593 In State v. Green, 443 So.2d 531, 535 (La.1983), the Supreme Court noted further that the "trial court's conclusion about the admissibility of a confession will not be disturbed if supported by the evidence," citing State v. Burkhalter, 428 So.2d 449 (La.1983).
The evidence in this case clearly supports the trial judge's ruling that the defendant's statements were admissible. The defendant's statements, made at approximately 5:00 p.m. and 5:40 p.m. on December 12, 1983, were prefaced by a recitation of his Miranda rights by the interviewing police officers. As indicated by his transcribed statements, the defendant stated that he was willing to tell the police officers what happened. Detective Smith, one of the police officers who took the statements from the defendant, testified at the motion to suppress hearing that he waited until the defendant was transferred from the hospital to the jail before attempting to talk with him. The defendant's physical condition was sufficiently improved to justify his release from the hospital. The officer testified that at the time the statements were recorded, the defendant was alert and appeared to know what he was doing and saying. Therefore, the defendant's argument concerning his inability to make a knowing and intelligent waiver of his constitutional rights because of his recent hospitalization is without merit.
Defense counsel also contends that the defendant could not have made a knowing and intelligent waiver of his rights due to his past history of mental illness. Although the record indicates that the defendant was previously treated for mental problems at various mental health treatment facilities, there was no evidence presented that the defendant could not and did not understand his constitutional rights. There was also no evidence that the defendant's mental capacity was in any way diminished at the time these statements were made. The record reveals that the defendant was a high school graduate, who by his own assertions, did well in school.
In Leatherwood, supra, the Supreme Court noted that "low intelligence, illiteracy, and mental problems do not necessarily preclude a valid waiver of Miranda rights. State v. Gaines, 354 So.2d 548 (La.1978); State v. Payne, supra." 411 So.2d at 33. From our review of the transcripts of the defendant's recorded statements and the transcript of the hearing on the motion to suppress, we find that the evidence supports the trial judge's determination that the defendant's statements were voluntarily made with a knowing and intelligent waiver of his constitutional rights.
The defendant also argues that he was not sufficiently informed that counsel had been appointed to represent him before he gave the second statement in question. However, the trial judge's determination that there was a valid waiver of the defendant's right to counsel is also amply supported by the evidence.
The record indicates that once the interviewing officers realized there may be some confusion arising from the defendant's reference to both of the shooting incidents in one taped confession, they contacted the District Attorney's Office to determine a means by which they could remedy the situation. They were informed at that time that counsel had been appointed for the defendant. The record indicates that counsel had been appointed on December 9, 1983, while the defendant was still in the hospital. When the officers returned to interview the defendant approximately 40 minutes after the first statement was taken, they again informed the defendnat of his Miranda rights and of the fact that counsel from the Indigent Defender's Office had been appointed to represent him. The defendant's transcribed statement shows that he acknowledged his rights, verbally agreed to waive them and to talk to the officers without his appointed attorney being present.
*594 In State v. Serrato, 424 So.2d 214, 220 (La.1982), the Louisiana Supreme Court stated that:
Once counsel has been obtained for the defendant, he has the right to be informed that an attorney is available and willing to assist him. Statutorily, a defendant has the right to consult with counsel from the moment of his arrest. C.Cr.P. 230. Counsel is entitled to have free access to his client, in private, at reasonable hours. C.Cr.P. 511. Based on these statutes and Louisiana Const. Art. 1, § 13 "it is the policy of this state to welcome and encourage an attorney to confer with his client in order that he may intelligently exercise his rights during custodial interrogation." State v. Matthews, supra at 1278.
(footnotes omitted)
In State v. Matthews, 408 So.2d 1274, 1277 (La.1982), the Louisiana Supreme Court noted that the constitutional guarantee of the right to assistance of counsel includes the right of the defendant to have counsel present during any in-custody interrogation should the defendant express the desire.
It is evident from the record in this case that the defendant was informed of his right to counsel and that an attorney had been appointed to represent him. The defendant never indicated any desire to have counsel present with him during these custodial interrogations and specifically waived his right to have counsel present.
In State v. Johnson, 442 So.2d 1141 (La. 1983) the Supreme Court upheld the trial court's finding that the defendant in that case had made a voluntary and knowing waiver of his right to the presence of counsel during a custodial interrogation. In that case, defendant Johnson signed a written waiver of his right to have counsel present during an interrogation where he confessed to the offense for which he was arrested. He refused, however, to give a recorded or written statement. The police officers interrogating the defendant knew that he had an appointed attorney, but proceeded with the interrogation after the defendant signed the written waiver of his constitutional rights. The trial court found his oral statement to be admissible in evidence.
The Louisiana Supreme Court in Johnson, noted the following language from Moore v. Wolff, 495 F.2d 35 (8th Cir.1974):
If an accused can voluntarily, knowingly and intelligently waive his right to counsel before one has been appointed, there seems no compelling reason to hold that he may not voluntarily, knowingly, intelligently waive his right to have counsel present at an interrogation after counsel has been appointed. 495 F.2d at 37.
442 So.2d at 1144.
The court further stated that "although `the practice of interviewing prisoners in the absence of their attorneys' is undesirable, the right to have counsel present can be waived," citing State v. Siegel, 366 So.2d 1358, 1360 (La.1978).
Finding that there was no evidence that Johnson's counsel had asked the officers not to question his client and that Johnson had offered no testimony to rebut the State's evidence of a knowing and voluntary waiver of the right to counsel, the Supreme Court found that the trial court did not err in finding a voluntary and knowing waiver by the defendant of his right to the presence of counsel.
Justice Dennis in his concurrence in Johnson noted that the defendant was offered an opportunity to have his lawyer with him during the questioning but he declined. He also found that there was no indication that the defendant's attorney tried to contact Johnson during the interrogation and there was nothing to suggest that Johnson could not have interrupted the questioning and sought the advice of his counsel at any point. Justice Dennis also distinguished the case of Matthews, supra, where the Supreme court held that when, unknown to a person under arrest and subjected to interrogation, an identified attorney is actually available and seeking an opportunity to render assistance to him, and the police do not inform him of that fact, any statement or the fruits of *595 any statement obtained after the police themselves know of the attorney's efforts to assist the arrested person cannot be rendered admissible on the theory that the person knowingly and intelligently waived counsel. Matthews, supra, at 1278.
Defense counsel makes a similar argument in the instant case. However, this case is also distinguishable from Matthews, as Mr. Allen was informed of the fact that counsel had been appointed for him and that he could have his attorney present with him. As noted above, the defendant's transcribed statement shows that he wished to proceed with the statement without the presence of counsel.
The case at bar is also distinguishable from the decision of the U.S. Supreme Court in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The Supreme Court in Edwards held that a waiver of the right to counsel must not only be voluntary,
[B]ut must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."
101 S.Ct. at 1884. (citations omitted)
In Edwards, the defendant asserted his right to counsel and his right to remain silent. However, the police, without furnishing the defendant with counsel, returned the next day to confront him again and, as a result, secured incriminating oral statements.
The Supreme Court found that there was not a valid waiver by Edwards of his right to counsel and stated that
[A]lthough we have held that after initially being advised of his Miranda rights, the accused may himself validly waive his right and respond to interrogation, see North Carolina v. Butler, supra, 441 U.S. [369] at 372-376, 99 S.Ct. [1755] at 1757-1759 [60 L.Ed.2d 286 (1979)], the court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogations, a valid waiver of that right cannot be established by showing only that he responded to further police initiated custodial interrogation even if he has been advised of his rights.
101 S.Ct. at 1884-1885. (footnote omitted)
The U.S. Supreme Court in a footnote number eight to Edwards mentioned its previous decisions in Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977) and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) where the court held that a valid waiver of a defendant's right to counsel should not be inferred from a mere response by the accused to overt or more subtle forms of interrogation or other efforts to elicit incriminating information. In both of these cases, the defendants were represented by counsel and the admissions in question were obtained in their absence.
Although the issue in the instant case is similar to that noted by the U.S. Supreme Court in the above mentioned cases, the factual circumstances surrounding the defendant's statements distinguish his inculpatory admissions from those obtained in Edwards, Brewster and Massiah, supra.
Similar distinctions were also noted by the United States Fifth Circuit Court of Appeal in Jordan v. Watkins, 681 F.2d 1067 (5th Cir.1982). In Jordan, the defendant moved to suppress his tape recorded confession, elicited from him in the absence of appointed counsel during a custodial interrogation. The Fifth Circuit Court of Appeal held that the defendant's confession was admissible even though he had requested counsel at a preliminary hearing before the trial judge. The trial judge postponed the hearing until counsel could be appointed for the defendant. When the defendant was returned to the county jail he was taken to an interview room where he was again advised of his rights. At that time the defendant repeated his confession *596 with the knowledge that his statements were being tape recorded.
The Fifth Circuit Court of Appeal concluded that Jordan's case was distinguishable from that of Edwards, supra. The court noted that Jordan never requested the assistance of counsel with respect to custodial interrogation; he merely told the judge that he would like appointed counsel to assist him in further judicial proceedings. He never "invoked his right to have counsel present during custodial interrogation" or "expressed his desire to deal with the police only through counsel." He never indicated any reluctance to speak with his interviewers, and he never attempted to cut off questioning. Jordan had stated that he understood his rights at the beginning of the tape recorded confession and he had also executed a written waiver of his rights when he first confessed to the crime prior to his court appearance. The court stated that:
An express written or oral statement of waiver of the Fifth Amendment right to remain silent or of the right of counsel is neither necessary nor always sufficient to establish that an accused's waiver was voluntary, knowing and intelligent. See North Carolina v. Butler, 441 U.S. 369, 370, 99 S.Ct. 1755, 1756, 60 L.Ed.2d 286 (1979), where the court set forth these guidelines for determining the validity of a waiver of Miranda rights:
... The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.
441 U.S. at 374, 99 S.Ct. at 1757, 50 L.Ed.2d at 282 (footnote omitted).
681 F.2d at 1074.
In the case at bar, at no point prior to or during the custodial interrogations of Mr. Allen, did he invoke his right to consult with an attorney or to have an attorney present while he was giving the statements. The defendant affirmatively waived his right to counsel orally in both of the recorded and transcribed statements. He was informed that an attorney had been appointed to represent him before he gave the second statement to the police officers. The defendant's oral acknowledgment of that fact is sufficient to support the trial judge's determination that the defendant knowingly relinquished the right to have counsel present during the custodial interrogation. Although the Louisiana Supreme Court has stated that it is undesirable to interview prisoners in the absence of their attorneys, the right to have counsel present can be waived as it was in this case, and particularly when the record shows that the interviewing police officers fully and openly advised the defendant of his rights and options. Accordingly, the defendant's assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, the defendant argues that the trial court erred in failing to give the defendant's Requested Jury Charge Number 2. The defendant's requested charge was as follows:
Equivocal conduct does not afford probable cause for warrantless arrest if possibility of criminal conduct is no greater than the possibility of innocent behavior. Williams v. McNeil, 432 So.2d 950 (La. App. 4th Cir.1983).
The trial court sustained the state's objection to this charge indicating that it was sufficiently included within the general charge to the jury. The defendant contends, however, that this requested special charge was not adequately covered by the trial court's general charge.
LSA-C.Cr.P. Art. 807 provides in part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
It is well-settled that requested charges which are already substantially covered by the trail court's general charge are properly refused. State v. Simmons, 422 So.2d *597 138, (La.1982). In State v. Holmes, 467 So.2d 1177, 1188 (La.App. 2d Cir.1985), writ denied 470 So.2d 119 (La.1985), this court noted that "A special requested charge must be supported by the evidence presented at trial, because the court is not bound to instruct the jury on abstract principles of law. State v. Telford, 384 So.2d 347 (La.1980)."
In the instant case, the trial judge stated that he thought that his general charge otherwise included the requested special charge. The pertinent language used in the trial court's general charge was as follows:
A peace officer, may without a warrant, arrest a person when: The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer.
The standard of probable cause to believe that a crime committed is a lesser degree of proof than beyond a reasonable doubt and is determined by the setting in which the arrest took place, together with facts and circumstances known to arresting officers from which he might draw a conclusion based on his training and experience.
While the officer need not have sufficient proof to convict, mere suspicion is not enough to justify a warrantless arrest.
The trial judge in this case clearly stated his reasons for refusing the requested special jury charge. It is evident that the requested charge was included and covered by the trial court's general charge. Therefore, this assignment of error is also meritless.

ASSIGNMENT OF ERROR NO. 4
By this assignment of error, the defendant contends that the lower court erred in imposing an unconstitutionally excessive sentence. He asserts that the trial court did not give sufficient consideration to his mental problems when deciding to impose the maximum sentence. The defendant also claims that the trial court improperly applied LSA-C.Cr.P. Art. 893.1. The defendant contends that this article is used on a random basis and as a result, its application to his case was arbitrary and capricious on the part of the trial judge. The defendant also contends that LSA-C.Cr.P. Art. 893.1 does not allow the individualization process that is required by LSA-C. Cr.P. Art. 894.1.
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in 894.1, the record must reflect he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied 438 So.2d 1112 (La.1983).
Based on the circumstances of this case, we find that the trial judge sufficiently complied with LSA-C.Cr.P. Art. 894.1, did not impose an unconstitutionally excessive sentence, and properly applied LSA-C.Cr.P. Art. 893.1.
In individualizing the sentence imposed on the defendant, the trial court reviewed the facts of this case and the defendant's past criminal record, as indicated by the pre-sentence investigation report. The trial court noted that the defendant has a history of criminal activity dating back to 1945. Until 1972, the convictions were for minor misdemeanor type offenses. However, *598 in 1972 the defendant was charged with attempted murder of a police officer. The court noted that the defendant was committed to Central State Hospital after that incident.
The court also pointed out that the defendant was convicted of aggravated assault in January of 1983. The facts of that case revealed that the defendant was observed shoplifting in Shreveport by a security officer. In response to the officer's questioning, the defendant pulled a pistol from his coat pocket and pointed it at the security officer in an effort to leave.
The trial court also took cognizance of the defendant's education and employment history. The defendant graduated from high school and claimed to have received an honorable discharge from the army. The presentence investigation reveals that the defendant claims that he is an ordained Baptist Minister and that he attended the Los Angeles Preaching and Training School for four years. He also worked at other various jobs in California and Shreveport.
The defendant's extensive medical and mental health treatment records were also considered by the trial court. The defendant has been treated at the VA Hospital in Shreveport, Central Louisiana State Hospital, LSU Medical Center, and the Shreveport Mental Health Center. In 1966, he was referred to the LSU Medical Center by the Coroner's Officer where he was determined to be psychotic. He was then committed to the Central State Hospital, where the diagnosis was schizophrenic reaction, but he was released after six months at that facility and placed on continuing medication. He was re-admitted after the September, 1972 shooting incident. In 1981, the defendant was admitted to the VA Hospital after threatening to kill a person working in his neighborhood. He was diagnosed as schizophrenic and given medication. He was then treated at the Shreveport Mental Health Center on referral from the VA Hospital where it was noted that he apparently has a fascination with guns. Other symptoms of mental illness exhibited by the defendant consisted of delusions and hallucinations of a religious nature.
The trial court stated that the defendant professes to be a "holy man or a man called by the Lord, yet, he has pursued acts of violence particularly directed toward those in any degree of authority such as police officers." The court also reviewed the findings of the sanity commission which was appointed before trial to examine the defendant and noted that the commission found the defendant was sane at the time of the instant offense and was capable of understanding the proceedings and assisting his counsel at trial.
Finding that this was the third time the defendant had directed a weapon at an officer, the court stated its belief that the defendant presented a clear and present danger to other citizens in the community, particularly law enforcement officers. The trial court felt that the defendant's mental problem could not mitigate the sentence imposed due to the defendant's history of acts of violence and a readiness to use weapons. The court stated "I simply am not willing to apply the requested mitigation factors because of the prior mental situation ... I cannot accept any lesser sentence than that imposed because of the seriousness of the offense."
In arriving at this decision, it is obvious that the trial court thoroughly reviewed the circumstances of this offense, the past criminal record of the defendant, and his history of mental illness. We find that he individualized this sentence to this defendant in compliance with LSA-C.Cr.P. Art. 894.1.
In reviewing the defendant's possible sentence, the trial court observed that the maximum sentence under LSA-R.S. 14:27 and 14:30 was 50 years at hard labor. The court stated that this defendant would not be entitled to a suspended sentence as it was the court's belief that defendant should be incarcerated for the maximum period of time authorized by law.
In State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ denied 456 So.2d *599 171 (La.1984), a sentence of 50 years at hard labor was found to be appropriate for the offense of attempted first degree murder. This court noted that "we are mindful of the principle that ordinarily maximum sentences are appropriately imposed in cases involving the most serious violations of the described offenses and for the worst kind of offender; nothing else will justify the great sentencing discretion given the trial judge," citing State v. Jones, 398 So.2d 1049 (La.1981). 450 So.2d at 1371.
In Pettaway, the trial court concluded that the defendant was the worst kind of offender in an attempted first degree murder case. This was supported by the record which revealed that a police officer was disarmed, shot repeatedly without provocation and permanently disabled.
In Pettaway, the trial court found that the defendant's history of mental problems, including a diagnosis of schizophrenia, did not sufficiently mitigate his conduct or excuse or justify his actions. The defendant's argument that his history of mental problems should have justified a less onerous sentence, was not sufficient to mandate a finding that the trial judge abused his great discretion.
In the instant case, we find that the trial judge did not abuse his wide discretion in imposing the maximum sentence. The defendant had a history of violence towards police officers and others in authority. The defendant's history of mental problems was noted by the trial court and its refusal to consider that as a sufficiently mitigating factor to justify a lesser sentence in light of the evidence was an appropriate exercise of its wide discretion. This maximum sentence is not unconstitutionally excessive. It does not indicate a needless imposition of pain and suffering and it does not shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980), State v. Goode, 380 So.2d 1361 (La.1980).
We also find the defendant's claim that LSA-C.Cr.P. Art. 893.1 was improperly imposed in this case to be without merit. LSA-C.Cr.P. Art. 893.1, enacted in 1981, provides:
When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) the maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(2) five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole.
The trial court correctly determined that LSA-C.Cr.P. Art. 893.1 was applicable to this case and ordered that the defendant serve his fifty year sentence without the benefit of probation, parole, or suspension. The defendant's contention that the application of this article to his sentence was arbitrary and capricious is unfounded. The article clearly applies to the facts of this case and was correctly applied by the trial court, even though the defendant's sentence would probably have not been illegal had the trial court failed to apply the statute. State v. Coleman, 465 So.2d 709 (1985).
The defendant's argument that LSA-C. Cr.P. Art. 893.1 is in direct contradiction with LSA-C.Cr.P. Art. 894.1 is also without merit.
In State v. Jones, 451 So.2d 1181 (La. App. 1st Cir.1984), the First Circuit Court of Appeal stated "LSA-C.Cr.P. Art. 893.1 and LSA-R.S. 14:95.2 are valid limitations on the sentencing considerations listed in LSA-C.Cr.P. Art. 894.1. See State v. Lawson, 410 So.2d 1101 (La.1982); State v. Stevenson, 447 So.2d 1125 (La.App. 1st Cir. 1984)." 451 So.2d at 1187. This argument has also been considered and rejected in State v. Hogan, 454 So.2d 1235 (La.App. 2d Cir.1984), writ granted 468 So.2d 565 (La. 1985).
In the instant case, the trial judge's application of LSA-C.Cr.P. Art. 893.1 does *600 not conflict with LSA-C.Cr.P. Art. 894.1. The trial judge sufficiently complied with the guidelines of LSA-C.Cr.P. Art. 894.1 in individualizing the sentence to this defendant even though he did not articulate every aggravating and mitigating factor enunciated in the article. While it is true that this is the maximum sentence that could be imposed for attempted first degree murder, the trial court's review of the defendant's past criminal record and the circumstances surrounding this offense indicates that this sentence is appropriate.
In State v. McKnight, 446 So.2d 915 (La.App. 1st Cir.1984) the application of LSA-C.Cr.P. Art. 893.1 was again discussed. The court noted that the statute provides for a sentence of not less than five years without benefit of parole, probation or suspension when the offender has used a firearm in the commission of a felony that carries a possible maximum sentence of five years or more. The court stated "this in no way implies that a sentence of more than five years without these benefits is prohibited. State v. Moore, 442 So.2d 726 (La.App. 1st Cir.1983)." 446 So.2d at 916. We agree and find that the trial court properly imposed LSA-C.Cr.P. Art. 893.1 in addition to the penalty mandated by LSA-R.S. 14:27 and 14:30. Fifty years at hard labor without benefit of probation, parole or suspension of sentence, the maximum sentence allowed by law, based on the circumstances of this offense, does not appear to be grossly disproportionate to the severity of this crime. State v. Goode, supra. Therefore, this assignment of error is without merit.
Accordingly, for the foregoing reasons the defendant's conviction and sentence are affirmed.
AFFIRMED.